NATHAN N. POST, *as Administrator of the Estate of Oscar A. Burton, deceased,* v. EARNEST DAVIS.

### No. 277.

1. AGREEMENT TO LEASE—*Binding upon Parties, When.* Where a contract for the lease of lands is made in writing by telegrams and letters, and where there is nothing left for the parties except to execute a written lease, the mere fact that such written lease was in contemplation does not relieve either of the contracting parties from the responsibility of the contract which was already expressed. And where one of the parties without just reason refused to execute the lease, the other had a right to fall back on

the written propositions as originally made in the letters and telegrams, and if they constitute a contract in themselves, the absence of the formal agreement contemplated was not material.

2. ——— *Measure of Damages.* Where the written lease contemplated was presented for execution, and the plaintiff tendered performance of all the requirements on his part, the measure of damage is the difference between the contract price for the premises as agreed upon, and the amount the plaintiff was able to realize out of the property after he was notified that the defendant did not intend to take the pasture.

Error from Ellsworth district court; W. G. EAST-LAND, judge. Opinion filed March 5, 1898. Reversed.

*Ira E. Lloyd*, for plaintiff in error.

*C. J. Evans*, for defendant in error.

The opinion of the court was delivered by

McELROY, J. : This action was commenced by Nathan N. Post, as administrator of the estate of Oscar A. Burton, deceased, against Earnest Davis; to recover $1850, with interest, the amount claimed to be due as rent for pasture lands leased by defendant. The defendant's answer was a general denial. The case was tried before the court without a jury. The court found there was no contract of lease made, but only an agreement to make a contract, and rendered judgment against the defendant for one dollar and costs. The plaintiff filed a motion for a new trial, which was overruled, and presents the case to this court for review.

There is no dispute as to the facts in this case. The record discloses that Nathan N. Post is the administrator of the estate of Oscar A. Burton, deceased, and that the premises in question contained about 10,000 acres of pasture land in Ellsworth county. Several letters and telegrams passed between the parties in regard to the rent of these lands in the early spring

of 1894. On the 19th day of May the defendant wired, asking the plaintiff, " Will you take $2000 for the Burton pastures, payable October ?" The plaintiff replied on same date by wire : " Will accept $2000 for use of pasture until November 1, reserving horse pasture, about 200 acres, for ranch use." On May 21 the defendant wrote plaintiff in reply to the telegram of the 19th :

" I am in receipt of your telegrams, stating that you would accept $2000 for the use of the Burton pasture, reserving about 200 acres for ranch use. As soon as I received your telegram, my brother, who is interested with me in this matter, went at once to Geneseo, and will look over the pasture, and we will wire you on Friday or Saturday whether or not we will accept your proposition. If the pasture is all right, and is so we can put our cattle on it, we will accept it. When I was in Ellsworth county I did not take a sufficient look over the pasture to tell whether the fences and the water were sufficient to meet our requirements or not, but as soon as my brother reports to me I will wire you our decision in the matter. In your telegram you state ' until November.' Now, it may be that we will not have all of our cattle out until the middle of November or 1st of December, although we are not aiming to feed anything, but sell them on the market this fall. Will pay rent November 1."

On May 22 the defendant wrote plaintiff :

" I received your telegram this morning, stating that you had received no answer to your dispatch of the 19th, to which we wired you that we had written. The party who desires to rent the Burton ranch is now on the pasture, and as soon as we can reach him will wire our acceptance. I think there will be no doubt about us renting this pasture as soon as we can look over and see if there is water sufficient for our purpose."

On May 26, the defendant wired plaintiff : " Will

take the pasture at two thousand. Have written you to-day.'' The letter referred to in the last-named telegram reads :

'' I wired you this morning that we would give you $2000 for the Burton ranch pasture, consisting of about twelve sections, and excepting a pasture of about 200 acres near the house for ranch purposes. We want some repairing of the fence so it will hold our cattle, but that expense will be light. My brother writes me that there are posts out, but that the wire is in good shape. We will expect you to put the fence in good shape, and we will keep it in that way. You can make the lease out to Geo. N. and Earnest Davis and have it expire about December 1, this will give us ample time to move our cattle. Make the note due November 1, for $2000. You can learn of our responsibility from any bank of this place or from Mr. Clawson, of Kansas City. Think I can get the Savings Bank of this place to take the note of you. We have about 1000 cattle to put on the pasture, and would ask that the lease be made out at once so we can get the cattle on grass as soon as we can. Let me hear by return mail.''

June 4 the plaintiff wired the defendant :

'' Letter just received. D. N. Burton will be in St. Joe by the 15th and will bring lease. If need pasture before, turn cattle in as per telegram.''

All the negotiations for the rental of the lands were by letters and telegrams. There was no other or further correspondence had between the parties until after the 15th day of June, 1894. On that date Burton, the agent of the plaintiff, presented to the defendant a lease for the premises in question, embodying all the conditions and stipulations agreed upon, which the defendant refused to execute.

The question presented to this court is upon this correspondence. Does it constitute a contract? There was no objection made that the written lease presented

Post v. Davis.

for execution was not drawn according to the conditions contained in the letters and telegrams of the parties.   The last telegram and letter of Davis were both before Post at the time he wrote his telegram :

"Letter just received.   D. N. Burton will be in St. Joe by the 15th and will bring lease.   If need pasture before, turn cattle in as per telegram."

This telegram authorized the defendant, Davis, to take possession of the pasture, thereby conceding all of the conditions and requirements exacted by Davis. There was nothing more left for the parties except to prepare and execute a written lease.   The mere fact that a written lease was in contemplation does not relieve either of the contracting parties from the responsibility of the contract which was already expressed in writing.

It is true, as found by the trial court, that the parties intended that the agreement should be formally expressed in a single paper, a lease which, when signed, should be evidence of what had been agreed upon. But one of the parties, the defendant, without any just reason or excuse therefor, refused to execute the lease.   The plaintiff then had a right to fall back on the written propositions as originally made in the letters and telegrams, and if they constitute a contract in themselves, the absence of the formal agreement contemplated was not material.   Here the contract was already in writing, and it was none the less a contract for the reason that they intended that it should be put in another form, especially when their intention was made impossible by the inexcusable act of one of the parties.   (*Sanders v. Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209.)

The writings contained all of the contract contemplated to be afterward expressed in a written lease.

The parties had agreed upon every condition of their contract of lease. When the lease was presented to Davis for execution, the only excuse that he made for not executing the same was that he had failed to get the cattle. The plaintiff tendered performance of all the requirements of the defendant. The measure of damage sustained by plaintiff was the difference between the contract price of the leased premises as agreed upon, and the amount that the plaintiff was able to realize out of the property after he was notified that the defendant did not intend to take the pasture. The evidence clearly established that damage to be $1850, and the plaintiff should have judgment for that amount, with interest from November 1, 1894.

The defendant seeks to evade the responsibility of the contract on account of his inability to utilize the pasture. In fact, at the time the lease was presented to the defendant for execution he did not insist that the contract had not been made, but only insisted that he was unable to perform his part of the contract. The minds of the contracting parties met upon every condition exacted by either party. The court properly found the issues in favor of the plaintiff, against the defendant, but erred in the assessment of the amount of plaintiff's recovery. Under the pleadings and evidence in this case, the plaintiff was entitled to recover his damages sustained, with legal interest. The judgment is reversed, and the cause remanded with direction that the court award a new trial.