Willey v. Goulding.

<hr>

No. 20,457.

M. O. WILLEY, *Appellee*, v. J. W. GOULDING, *Appellant*.

SYLLABUS BY THE COURT.

1. UNLAWFUL DETENTION — *Defendant Claiming Under New Lease — Evidence—Letters of Landlord—Case for Jury*. The evidence in an action for unlawful detainer held to have a tendency to show that a letter was written by the owner of real estate to his agent containing an offer to rent it to the occupant for a stated amount; that the letter was shown to the occupant, who notified the agent that he accepted the offer; and that the relations of the parties was such that notice to the agent was equivalent to notice to the principal.

2. SAME—*Contract for Lease—Not Affected by Subsequent Ineffectual Negotiations*. Assuming the facts to be established as indicated in the preceding paragraph, a completed contract resulted, which was

not affected by a subsequent request by the tenant for the execution of a formal lease containing new terms, so long as he did not insist upon them as a condition to the performance on his part of the original agreement.

3. SAME—*Memorandum in Writing—Letter Signed by Owner of Premises.* A sufficient memorandum in writing to satisfy the statute of frauds may consist of a letter from the owner of real estate to his agent, offering to lease it on stated terms, followed by an oral acceptance by the tenant.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed December 9, 1916. Reversed.

*H. O. Trinkle,* and *Albert Hoskinson,* both of Garden City, for the appellant.

*Richard J. Hopkins,* of Garden City, and *Edgar Foster,* of Dodge City, for the appellee.

The opinion of the court was delivered by

MASON, J.: J. W. Goulding occupied a room in a building owned by L. W. Fulton under a written lease for one year expiring February 1, 1915, providing for a monthly rental of $30. Prior to the expiration of the lease, negotiations were had as to the terms on which Goulding might continue his occupancy, in the course of which a proposition was made that he should pay $40 a month, which was modified by a provision that for one year he might pay $35 a month, he making such repairs as he found necessary. He remained in possession, paying $35 a month, and making some expenditure for repairs. About February 10, 1915, he prepared a written lease, which Fulton refused to sign without the insertion of a clause making it subject to a sale. Goulding refused to accept that addition. About the middle of April, 1915, Fulton sold the property to M. O. Willey, who, upon sufficient notice, brought a proceeding for unlawful detainer against Goulding, which was taken to the district court on appeal. The district court, after hearing the evidence, directed a verdict for the plaintiff on the ground that under the admitted facts the minds of the parties had never met as to the terms of a lease, and that Goulding had become a tenant at will. The defendant appeals.

1. The ruling made can stand only in case the evidence, with the reasonable inferences therefrom, considered in the most

favorable aspect for the defendant, had no tendency to sustain his contention that he was entitled to hold the property until February, 1916. In addition to the matters already stated there was evidence establishing, or tending to establish, these facts: On January 10, 1915, Fulton, who was a nonresident, wrote to his agent:

"Now as to leasing the room to Goulding, will say the price will be $40 per month in advance. I have a chance to rent it for $40 per month and have had it for some time so you see it is a matter of business with me. You can notify him that his rent will be $40 per month after the expiration of his lease. I have a splendid opportunity to rent it for $40 so would not consider any other proposition. Please let me hear from you soon."

On January 19, 1915, he again wrote:

"In reply to your letter will say Harry Goulding [the defendant's son] was here last night and he seemed to be satisfied with the proposition I made him, as follows: $35 per month for the first year and them to repair the room to suit themselves, and should they want it for two years the rent will be $40 per month."

A day or two later Fulton's agent showed this letter to the defendant, who, within a few days, began making repairs, which were completed by February 1, costing about $100, consisting of painting, papering and electric-light wiring. On or before February 10 he paid $35 as rent for that month to the agent, who remitted it to Fulton on that day, writing him that the roof was leaking and that Goulding was complaining of it, suggesting that he should ascertain the cost of fixing it, and adding: "Mr. Goulding is getting a lease drawn up and it will be ready in a day or so, and I will send it to you for your approval." Shortly afterwards Goulding gave a form of a lease to the agent, who sent it to Fulton, who, on February 24, wrote to Goulding:

"Mr. Griggs [the agent] sent me a lease contract to sign and return to you but as I want to sell the building I did not return the lease. I am about to sell it now but in case the deal does not go through we would have to have a sale clause attached to the lease as I want to sell the building. I will let you know how I come out on the sale in a short time. In case I do not make this sale we will fix up a lease subject to sale. If you still want it. Will write you again in a few days."

We think this evidence was sufficient to warrant a court or jury in finding these facts: Fulton's letter of January 10, when communicated by his agent to Goulding, amounted to an

offer to rent the property for one year at $35 a month, the tenant to make any needed repairs, and to have an option to keep the place another year at $40, the other terms of the tenancy to be such as the law would imply without express agreement, or possibly to be the same as were embodied in the prior lease. Goulding by his conduct, if not in so many words, signified to the agent that he accepted this offer without qualification. The agent's relations to the transaction were such that notice to him of an acceptance was of the same effect as though given to his principal.

2. If these facts are regarded as established, then a completed contract resulted prior to February 10. And in that case the circumstance that Goulding afterwards asked to have a lease executed embodying the agreement already made, or even that he proposed the insertion of new conditions in such a lease, could not operate to rescind the contract that had already been entered into, so long as he did not repudiate its terms, or insist upon the proposed new matter as a condition of its performance on his part. The fact that the parties may have contemplated the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they had not already bound themselves to a definite and enforceable contract whose terms could be changed only by mutual consent. (*Post v. Davis,* 7 Kan. App. 217, 52 Pac. 903; 6 R. C. L. 618-620; Note, 29 L. R. A. 431; Note, 110 Am. St. Rep. 755.) It results from these conclusions that the case should have been submitted to the jury to determine the questions of fact already indicated.

3. A contract giving the tenant the right of occupancy for one year, with the privilege of two, is within the statute of frauds. (20 Cyc. 214; 29 A. & E. Encycl. of L. 886.) Here the making of repairs may possibly have constituted such a part performance as to take the contract out of the statute. But in any event the letter of January 19, signed by Fulton, was a sufficient memorandum in writing to satisfy the statute. Considered in connection with other portions of the correspondence it sufficiently identified the property. The fact that it was addressed and delivered to the agent of the writer and not to the other party to the contract does not render it inadequate for the purpose. (20 Cyc. 255; 29 A. & E. Encycl. of

L. 855.) And the offer having been made in writing, signed by the party sought to be charged, an oral acceptance was sufficient. (20 Cyc. 254; 29 A. & E. Encycl. of L. 858.)

The judgment is reversed and the cause remanded for a new trial.