No. 24,978.

WILLIAM M. SINCLAIR, *Appellee*, v. THE BOARD OF EDUCATION OF
THE CITY OF COFFEYVILLE, *Appellant*.

SYLLABUS BY THE COURT.

SUPERINTENDENT OF CITY SCHOOLS—*Contract of Employment as Superintendent of Schools of City of First Class—Contract to Be Binding Must Be in Writing Signed by the Parties.*. Under section 72-1721 of the Revised Statutes, the board of education of a city of the first class is not bound by its election of a superintendent for the schools of the city, which election occurred at a regular meeting, where the record of the meeting of the board concerning the election is a record of what the president of the board said the board did and that record does not specify the time when the service shall begin or end, where there is no contract signed by either the board or the person who claims to have been thus elected superintendent, and where the board at a subsequent meeting votes to reconsider its action at the previous meeting and thereafter votes to rescind the election of the superintendent.

Appeal from Montgomery district court; THOMAS E. WAGSTAFF, judge *pro tem.* Opinion filed February 9, 1924. Reversed.

*A. R. Lamb*, and *Clement A. Reed*, both of Coffeyville, for the appellant.

*W. E. Ziegler, A. M. Etchen,* and *Carl E. Ziegler*, all of Coffeyville, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered judgment for $1,231.60, damages for the refusal of the defendant to permit the plaintiff to act as superintendent of schools of the city of Coffeyville for the year beginning August 1, 1919, and ending July 31, 1920. The defendant appeals.

The action was tried by Thomas E. Wagstaff as judge *pro tem.* Findings of fact were made as follows:

"1. That on the 7th day of April, 1919, the Board of Education of the City of Coffeyville, Kansas, then consisting of 'Kent, Pettiner, Englehart, Robinson, Huffman, and Boswell,' citizens of the City of Coffeyville, Montgomery County, Kansas, constituted the Board of Education of defendant's city.

"2. That on the 7th day of April, 1919, at a meeting of the Board of Education, with all members of the Board present, with the exception of George Boswell, the matter of the election of a superintendent of the city schools of the defendant board came up in its regular order before the board.

"3. That at that time, and at the Administration Building of said defendant board, the board of education elected the plaintiff, William Sinclair to

Sinclair v. Board of Education.

serve for one (1) year, commencing August 1st, 1919, and ending July 31st, 1920.

"4. That at said meeting, the following members of the Board voted on the 4th Ballot taken for the election of the plaintiff, William Sinclair as superintendent: Messrs. Kent, Pettiner, Englehart and Robinson; James Huffman voted in the negative; George Boswell not present.

"5. That on the 5th day of May, at a meeting of the defendant Board of Education, at its administration building, a motion was made to reconsider the action of the Board previously held on April 7th, 1919, which motion was duly passed.

"6. That on the 13th day of May, 1919, the defendant Board adopted a motion, in the substance of which was the election of the plaintiff, William Sinclair, previously held by the Board on the 7th day of April, 1919, be rescinded.

"7. That immediately after the election of the plaintiff, William Sinclair as superintendent, by defendant board, for the period specified, L. E. Robinson, a member of the Board, in the presence of W. E. Englehart notified the plaintiff of his election over the telephone.

"8. That after the election of the plaintiff, he went to Kansas City, Missouri, and while there received from the President of the Board a letter addressed to the plaintiff as 'superintendent elect.'

"9. That between the 7th day of April, 1919, and the 25th day of April, 1919, the plaintiff, together with L. E. Robinson, then the Chairman of the Teachers and Salaries Committee of the defendant Board, consulted, with reference to the selection of the teaching force of the defendant Board for the year, which, the Court has found, the plaintiff was serving as superintendent.

"10. That after the election of the plaintiff as superintendent, and on August 1, 1919, the plaintiff presented himself to the administration building, of the defendant Board, in which was then located at the office of the superintendent of the Board of Education, for the purpose of complying with the contract entered into between the plaintiff and defendant. He was advised by the clerk of the Board of Education that 'he could not enter the office of the Board and that the Board had selected Professor Al. Decker as superintendent and who was then in the building and acting as such.'

"11. The defendant Board became dissatisfied with its selection of the plaintiff, either on acount of the selection of the teaching force and the principal of the schools, or on account of the general turmoil that had been engendered by reason of previous difficulties in educational matters, in what is known as 'the Scott-Sinclair controversy' which attended the selection of the plaintiff, and therefore, thought it was the better part of wisdom and in the best educational interest of the City of Coffeyville to discharge or refuse the plaintiff as superintendent and, in this connection, the court finds it unnecessary to state which of the methods, as indicated, prompted the Board in its action; but time has proven that the rejection was made and the selection of the present Superintendent was the wiser course.

"12. The court finds that after the plaintiff had been denied by the board officially, as its superintendent, plaintiff had sought employment elsewhere, and, for the period of his election as superintendent, he earned the sum of

Nineteen Hundred and Seventy-five Dollars ($1975) at various employments; that against this sum the court advises·that the plaintiff lawfully and legally expended the following items:

"Thirty-five Dollars ($35), in a trip to Chicago; Fifty Dollars ($50), in a trip to Casper, Wyoming; that the expenses incurred by the plaintiff as indicated to him as 'Agency Fees,' in the sum of One Hundred, Forty-two and 50-100 Dollars ($142.50), as well as an item of expenses, 'trip Kansas City to Coffeyville and return,' should not be allowed, Twenty-five Dollars ($25).

"13. The court finds that there was a legal and lawful contract entered into between the Board of Education, of the City of Coffeyville, Kansas, and William Sinclair, at the agreed salary of Three Thousand Dollars ($3000); that there should be offsetting from said amount, the sum of Nineteen Hundred and Seventy-five Dollars ($1975), less Eighty-five Dollars ($85) as hereinbefore found to be allowed the plaintiff as legal expense in procuring his employment, as aforesaid.

"14. The court finds that at the time the plaintiff, in January, 1921, presented to the Board of Education a demand in the sum of Twelve Hundred Twenty-five and 50-100 Dollars ($1225.50), there was then due and owing from the defendant to the plaintiff, the sum of Eleven Hundred and Ten Dollars ($1110); that there is interest due on said amount, at the rate of six per cent (6%) the sum of One Hundred, Twenty-one and 60-100 Dollars ($121.60), or the total at this time of Twelve Hundred Thirty-one and 60-100 Dollars ($1231.60).

"15. That there was a written contract entered into, or the same may be construed, when you deduce and thus take into consideration the minutes, as well as the written letter of the president of the board, addressing the plaintiff 'Superintendent Elect'."

Findings 1 to 12 inclusive are in the main summaries of the evidence. Findings 13 and 15 are legal conclusions. The minutes of the meeting of the board of education mentioned in the 15th finding read as follows:

"The board of education met in regular session in their office at 8:00 o'clock P. M. April 7th, 1919, with the following members present: Kent, Robinson, Englehart, Pettiner, Huffman; Absent, Boswell.

"Mr. Robinson made motion that the Board go into executive session for the election of superintendent. Seconded and carried.

"The president asked the clerk to retire from the room while the board discussed the matter of superintendent. When the clerk was recalled he stated that Wm. M. Sinclair had been elected superintendent for one year on the fourth ballot, the vote standing four to one. He also stated that Mr. Robinson had made motion, seconded by Mr. Englehart, setting the salary of the superintendent at $3,000 and that said motion had carried. He stated that the only candidate whose names were voted on were Aldrich, Peek, Sinclair, Mitchell, and Hughes."

The defendant contends:

"1st. That the special finding of the court number thirteen that a legal contract was entered into between the plaintiff and the defendant is not sustained by any competent testimony.

"2nd. That special finding of the court number fifteen that a written contract was entered into between the plaintiff and the defendant is not sustained by any competent testimony, and that the plaintiff is not entitled to recover because no written contract was entered into between the plaintiff and the defendant as provided by Section 9097 Gen. Statutes of Kansas, 1915.

"3rd. Plaintiff is not entitled to recover the Eighty-five Dollars allowed for railroad fare, sleeper and meals."

The case turns on the correctness of the conclusions of law stated in finding No. 15 and that part of finding No. 13, which reads:

"That there was a legal and lawful contract entered into between the Board of Education of the City of Coffeyville, Kansas, and William Sinclair, at the agreed salary of Three Thousand Dollars ($3000)."

Section 72-1721 of the Revised Statutes, governing expenditures by boards of education in cities of the first class, reads:

"No expenditure involving an amount greater than two hundred dollars shall be voted, except in accordance with the provisions of a written contract."

Coffeyville is a city of the first class. To make a contract binding on the board of education of that city, the contract must be in writing. The plaintiff contends that there was such a contract. The minutes, a copy of which has been set out, purport to be in part a record of what the board of education did and in part a record of what the president said the board did. The latter part of the minutes is not, and does not purport to be, a record of the action of the board. Admit, however, that it is a record of the meeting at which the plaintiff was elected superintendent of the city schools of Coffeyville for one year at $3,000. It is the record of a step taken by the board preliminary to contracting with the plaintiff. The record does not constitute a contract, but records the determination of the board to employ the plaintiff if a contract could be made with him on the terms named by the board.

There was no evidence, and there is no finding, that the plaintiff ever in writing accepted the position to which he was elected at the salary named by the board. He did attempt to enter upon the duties of superintendent at the time when he supposed those duties would commence. No document purporting to be a contract between the board of education and the plaintiff was signed by either

of them. The statute contemplates a signed written contract. Even if it be conceded that a record of a meeting of a board of education showing the election of a superintendent and specifying the compensation to be paid, the service to be performed, when his duties should begin, the time for which he was elected, and when his duties should end, accepted by the superintendent-elect in writing, would constitute a contract between a board of education and an elected superintendent, there was no contract because the terms of the employment named by the board in its minutes were not accepted in writing by the plaintiff.

There was evidence which tended to show that the plaintiff had made a written application for the position of superintendent of the public schools of Coffeyville for the year commencing August 1, 1919. There was no evidence to show the compensation asked by the plaintiff, nor the terms of the employment—except the time—beyond what can be found in the expression "superintendent of schools." The election occurred after that application was made. At the election, the salary was fixed by the board of education. To constitute a contract, it was necessary that the plaintiff signify his acceptance of the position at the salary fixed by the board. That does not appear to have been done. The plaintiff was not bound to accept whatever salary might be named by the board. To comply with the statute, his acceptance of the position on the terms named by the board of education should have been in writing. That was not done.

That which the statute intends to prevent has here occurred—confusion about an employment and the consequent liability of the board. The statute required the contract to be in writing. There was no contract in writing. For that reason, the conclusions of law reached by the trial court in findings 13 and 15 were erroneous.

The plaintiff argues that he was elected to the office of superintendent of schools and that a contract was not necessary. The contention is not good. A superintendent of city schools is no more an officer than a grade teacher. Both are employees, not officers. Officers are sworn, superintendents of city schools are not.

The judgment is reversed and entered for the defendant.