No. 30,182.

B. R. Petrie, *Appellee*, v. The Sherman County Community High School and The Board of Education of the City of Goodland, *Appellants*.

(7 P. 2d 104.)

Opinion filed January 30, 1932.

*George D. Freeze,* of Goodland, for the appellants.

*C. L. Kagey,* of Wichita, *Leon W. Lundblade* and *L. M. Kagey,* both of Beloit, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one by a school teacher to recover for breach of contract of employment. The verdict and judgment were in his favor, and the community high school, which he claimed made the contract of employment with him, appeals. The points in the case are, first, whether a written contract was required by statute, and if so, what the legislature meant by a written contract.

The Sherman county high school was established by special act of the legislature in 1901. (Laws 1901, ch. 345.) The statute contemplated that the county high school should be established in a school district. Apparently it was established in Goodland, then a city of the third class, the schools of which were organized and

maintained under the school-district law. The act, however, provided for a genuine county high school. Supervision and control were vested in the school-district board, assisted by the county superintendent, but the county commissioners fixed the amount to be paid to teachers, the number of teachers to be employed, and the maximum sum to be expended for incidental purposes. A high-school tax was levied by the board of county commissioners on all the taxable property in the county. The funds so raised were used to pay expenses of the school, which were paid as other claims against the county were paid.

Other county high-school laws were enacted, and in 1923 a number of county high schools were in existence. The legislature of 1923 disorganized all of them and created in their stead community high schools:

"That upon the taking effect of this act, all county high schools in the state of Kansas, regardless of acts under which created, shall be disorganized and in their stead shall be created community high schools whose territory shall include all the territory in said counties not included in the territory of other accredited high schools. Such schools so organized and established shall be known and styled 'community high schools.'" (Laws 1923, ch. 187, § 1; R. S. 72-2501.)

The act provided for the election of trustees of community high schools, and provided the trustees of a community high school should levy a tax on the property of the community high-school district, to maintain the school, and should certify the levy to the board of county commissioners. This was, of course, incompatible with the power of boards of county commissioners to make levies under the county high-school system.

Goodland became a city of the second class. The territory of the original school district remained the same, and apparently the district was known as district No. 1. The extent of the territory of the community high school does not appear. The school affairs of a city of the second class are administered by a board of education. Apparently the high school of district No. 1 is the community high school, and apparently its affairs are administered by the board of education of the city of Goodland, constituting or acting as the board of trustees of the community high school.

On March 4 the community high-school board met in regular session at Goodland, with all members present, and the minutes of the meeting show plaintiff was elected to teach vocational agricul-

ture for the ensuing school year, beginning August 10, at a salary of $2,250. Authority of this meeting to do what the minutes show was done is not contested by either plaintiff or defendants. Within a day or two plaintiff did what was sufficient to constitute oral acceptance of employment on the terms stated, and asked the secretary if his contract had been mailed out, since he had not yet received it. The secretary replied they were out of blanks, were having blanks printed, and as soon as the blanks were received the contract would be sent out.

On March 18 the board met again, formally rescinded the action of March 4, voted not to employ plaintiff, and immediately after the vote was taken notified plaintiff he would not be employed. The work of teaching vocational agriculture includes summer work —overseeing home-work projects of students, getting new students, and doing community work among farmers of the district. Plaintiff testified that on August 10 he "began teaching." When school regularly commenced about September 10, plaintiff appeared at the schoolhouse, and on the second day of school he found himself locked out.

The record of the board meeting of March 4, 1929, shows the following:

"No written application having been made by Mr. Petrie, but he having informed members of the board that he desired to be reëlected, he was then considered, and it was moved by Stanley, seconded by Adams, that we vote on Mr. Petrie, which motion carried. The ballot, being spread, resulted in five votes for reëlection and three against. Mr. Petrie was declared reëlected. The ballot was then spread to determine the salary to be paid Mr. Petrie, which resulted in five votes for $2,250, one vote for $1,500, one vote for $2,000, and one vote for $2,200. Mr. Petrie having received a majority for $2,250, he was declared elected at that salary for the ensuing school year."

As indicated, plaintiff's acceptance of employment on these terms was oral. The community high school invokes the statute governing expenditures by boards of education of cities of the second class, which reads:

"No expenditure involving an amount greater than two hundred dollars shall be made except in accordance with the provisions of a written contract, . . ." (R. S. 72-1818.)

The two-hundred-dollar limitation in this statute applies to teachers' contracts, and applies to plaintiff's contract, if the statute is applicable, because the contract involved an expenditure of $2,250.

Plaintiff does not seriously dispute that the statute controls, but contends he had a written contract. The court does not regard the quoted statute as applicable, because it is the general statute relating to ordinary public schools in cities of the second class, and is not a statute relating to community high schools. The court, however, does regard another statute, invoked by defendant, requiring a written contract, as applicable.

When the county high school was disorganized the powers of the community high school were the powers of the county high school which the community high school succeeded, except as otherwise provided. (R. S. 72-2502.) The powers of the county high school were exercised by the school board of the district. The function of the county superintendent was merely to assist the board in doing the things the board had power to do. While the board of county commissioners had authority under the old act to determine number of teachers and salaries to be paid, employment of teachers was left to the district board. The power of the district board relating to hiring of teachers was limited by the following statute:

"The district board in each district shall contract with and hire qualified teachers for and in the name of the district, which contract shall be in writing, and shall specify the wages per week or month as agreed upon by the parties, and such contract shall be filed in the district clerk's office; . . ." (R. S. 72-1026.)

Plaintiff would, of course, contend he had a contract in writing, as required by this statute.

Plaintiff had a contract in writing under the common law of contracts. The purpose of a writing is certainty. In the opinion in the case of *National Cash Register Co. v. Lesko*, 77 Conn. 276, involving the form of an instrument which should be made to comply with the conditional sales act, the definition of a "written contract" by Bishop (Contracts, 2d ed., § 163) was adopted: "A written contract is one which, in all its terms, is in writing." Continuing, the court said:

"The signature of both parties is not always a necessary requisite to a written contract. The acceptance and performance by the plaintiff of the order signed by Wess was equivalent to a signing by the plaintiff of the agreement contained in it, and rendered it a written contract of conditional sale between the two parties." (p. 279.)

There is a multitude of cases declaring that if a written proposal be orally accepted and acted on the contract is a written contract.

The question arises in several classes of cases—under the statute of frauds, under the statute of limitations, under the parol evidence rule, and in cases in which it is necessary to determine whether interpretation of the contract is for the court or for the jury. It is not necessary, however, that the person to whom the offer is made should both accept and act under the written proposal. Usually acceptance is followed by some act of performance, and this probably accounts for the common form of statement; but the correct rule was stated in *Ellis v. Abell*, 10 Ont. App. 226:

"But where a proposal is made in writing and accepted in terms by the party to whom it was addressed, whether verbally or by acting upon it, it is a written contract, . . .: *Hotson v. Browne*, 9 C.B.N.S. 442; *Reuss v. Picksley*, L.R. 1 Ex. 342." (p. 251.)

The English cases cited by the Ontario court are quite conclusive.

In this instance the requirement of certainty was fully satisfied by the written record of the action of the board on March 4, required by law to be made and kept by the clerk of the board. A copy of the essential portions of the record on a separate sheet of paper could not be more authentic than the original record. The action of the board was clearly an offer, the oral acceptance consummated an effective contract, and there is no good reason for saying the contract was not a written contract, under the law of contracts.

It is well settled that there may be a contract although it was agreed a writing stating terms should subsequently be prepared. On the other hand, it is just as well settled that, although all terms are fully agreed to, there may be no contract until a written instrument is executed. In the latter case the better view is there should be an agreement that obligation should not attach until execution of the written instrument, or that one of the parties should express intention not to be bound until execution of the written instrument. The subject is, of course, one which the legislature may regulate. The legislature might go back to the old formal kind of contract requiring seal. If it did so there would be no contract in the absence of a sealed instrument. The question here is, What did the legislature of this state mean when in 1876 it provided that contracts of employment between school board and teacher shall be in writing?

The question just propounded is substantially answered by the

decision in the case of *Sinclair v. Board of Education*, 115 Kan. 434, 222 Pac. 766. The syllabus reads:

"Under section 72-1721 of the Revised Statutes the board of education of a city of the first class is not bound by its election of a superintendent for the schools of the city, which election occurred at a regular meeting, where the record of the meeting of the board concerning the election is a record of what the president of the board said the board did and that record does not specify the time when the service shall begin or end, where there is no contract signed by either the board or the person who claims to have been thus elected superintendent, and where the board at a subsequent meeting votes to reconsider its action at the previous meeting and thereafter votes to rescind the election of the superintendent."

The statute referred to relates to expenditures by boards of education of cities of the first class, and provides no expenditure involving an amount greater than $200 shall be voted except in accordance with the provisions of a written contract.

In the opinion in the Sinclair case it was said the purpose of the statute was to prevent confusion about employment, and the facts of the case show how confusion may arise from the manner in which minutes of board meetings may be kept. The opinion contains the following:

"No document purporting to be a contract between the board of education and the plaintiff was signed by either of them. The statute contemplates a signed written contract. Even if it be conceded that a record of a meeting of a board of education showing the election of a superintendent and specifying the compensation to be paid, the service to be performed, when his duties should begin, the time for which he was elected, and when his duties should end, accepted by the superintendent-elect in writing, would constitute a contract between a board of education and an elected superintendent, there was no contract because the terms of the employment named by the board in its minutes were not accepted in writing by the plaintiff. . . . To comply with the statute his acceptance of the position on the terms named by the board of education should have been in writing. That was not done." (pp. 437, 438.)

It will be observed the opinion says that if it be conceded an acceptance in writing would constitute a contract, there was no such acceptance, and there is no such acceptance in this case.

The legislature was not simply prescribing a form of contract which would satisfy correct modern legal theory. It had in mind the general popular notion of a written contract as a writing prepared to express terms and signed to express assent to those terms. Because of this conception, signing was not mentioned, signing being implied by the expression "contract in writing."

The petition stated facts sufficient to raise the legal questions which have been discussed. The petition contained a count for damages in the entire sum of $2,250, and contained a count for a month's salary earned between August 10 and the time school regularly commenced in September. A demurrer to the petition was overruled. There was no allegation (nor proof) that the board knew plaintiff was "teaching" before school commenced. It was alleged (and proved) that about September 10 (when plaintiff reported for duty at school) he was locked out. Since the action of the board on March 4 did not result in a contract, it availed plaintiff nothing to obtrude himself into the school's affairs under an unfounded claim he was legally employed.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the demurrer to the petition.

DAWSON, J., not sitting.