No. 33,608

C. F. FEY, *Appellee,* v. LOOSE-WILES BISCUIT COMPANY, *Appellant.*

(75 P. 2d 810)

Opinion filed January 29, 1938.

*Richard E. Bird, Richard E. Bird, Jr., Paul Brown* and *Silas S. Brown,* all of Wichita, for the appellant.

*Arnold C. Todd, Ralph Gore* and *Kurt Riesen,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The legal question involved in this appeal is whether the action is barred by the three-year statute of limitations, and this depends upon the question of whether the letter attached to the petition constitutes a written contract between the parties to this action, and, also, on whether the year 1931 is included therein.

The plaintiff was a traveling salesman and had been in the employ of the defendant corporation for many years. The headquarters of the defendant company were in Kansas City, Mo.; with a branch office at Wichita, Kan., under the charge of a local agent, and it was under this local agency that the plaintiff worked.

The petition alleged that the plaintiff during the last week of December, 1929, received an offer of employment from a competitive company with an advance in compensation, and therefore tendered his resignation to be effective January 1, 1930. The local agent at Wichita orally offered plaintiff a salary substantially equivalent to the offer made him by the other company, which would increase his monthly drawing account from $125 to $150, plus commission on sales, with a guaranteed total salary of $225 per month, or $2,700 per year. In July, 1930, plaintiff interviewed the manager of the company at the office of the company in Kansas City, Mo., and he, as manager, wrote a letter to Mr. Austin, who was in charge of the Wichita agency, dated July 9, 1930, which letter, omitting the first two paragraphs, is as follows:

"As the statements made to him by you, and practically confirmed by Mr. West at the time he was offered a position by the National Candy Company, to the effect that he would earn $225 per month if he stayed with us, amount to a guarantee of wages at that rate as long as he is in our employ, it will be satisfactory to consider his drawing account at the rate of $225 per month for the year 1930-1931 if he remains in our employ.

"It is understood that if his earnings for one month exceed this amount he is not to be paid any excess, but the whole earnings for the year are to be considered as a total, and the object of this arrangement is to pay him at the rate of $225 per month, or $2,700 per year.

"This does not make any general change in the method of figuring commis-

sions. His commissions are to be figured on the $2,083.33 net basis for a salary of $100 per month, so if his commissions on that basis should run over $225 per month, or $2,700 per year, you will pay him the excess amount; but if not, you will just pay him the difference between his drawing account of $150 per month, which is to be effective July 1, 1930, and $225 per month.

"In other words, at the end of this year, if his sales are not in such volume that he will earn more than $225 per month or $2,700 for the whole year, he is to be paid $1,050 to make the amount as agreed.

"We are assuming in this that he has drawn $125 per month for the first six months, and will draw $150 for the last six months of this year.

"This arrangement is not to be construed as a contract of service to continue for the length of time as specified, but rather it is understood that his employment is subject to the same limitations as heretofore existed. While we have a great deal of confidence in Mr. Fey, and we feel that he will give us his best efforts at all times, in case anything should occur to prevent him from doing so, we may discharge him or negotiate a change in contract; or, in case he should become incapacitated this agreement, of course, would be at an end immediately.

"We hope that by diligent effort and coöperation with the Wichita office and the sales department at Kansas City Mr. Fey will be able to run over his guarantee regularly before the end of the year.      Yours truly,

"JAMES McQUEENY, *Manager*.

"P. S.  There will be no objection to giving Mr. Fey a copy of this letter if he desires it."

The first two paragraphs refer to having had a conversation with Mr. Fey, the plaintiff, before telephoning to Wichita and to matters of account with Mr. Fey for the years 1928 and 1929.

The answer filed by defendant company admits the writing and the receipt of the letter attached to the petition, but alleges that under the provisions of the letter the Wichita agency made a different oral contract with plaintiff for the year beginning January 1, 1931, whereby plaintiff was to receive a monthly salary of $150 plus commission on sales actually made upon definite percentages, and the answer pleaded the bar of the statute of limitations.

The action was commenced June 30, 1936, and was for a recovery of compensation under the terms of the letter for the year ending January 1, 1932, in the sum of $875 with interest.  The evidence showed that a copy of the letter was given to the plaintiff by the Wichita agency and at the close of the year 1930 a check was given the plaintiff for $692.80 in compliance with the provisions of the letter for the compensation for the year 1930.  The evidence was conflicting as to the making of a new oral agreement for the year 1931, and the court placed the burden on the defendant as to that

issue. The trial court instructed the jury that if it did not find that a new contract was entered into as of January 1, 1931, but that the plaintiff continued to work under the old contract during the year 1931, then it should find for the plaintiff for the difference between what had been paid him and the sum of $2,700 per annum with interest. The verdict was for the plaintiff in the sum of $1,106.

The defendant demurred to the petition and to the evidence of plaintiff and filed a motion for a new trial, all of which were overruled, and defendant appeals from these rulings and also assigns error in the giving and refusing to give certain instructions. Of course, the action would be barred by the three-year statute of limitations unless there was a contract in writing for the services and compensation of plaintiff for the year 1931, this action having been commenced four and a half years thereafter.

It is urged that this letter could not be a written contract because it was not signed by the plaintiff and was only a letter between two agents of the defendant. Appellant cites the case of *Brant v. Johnson*, 46 Kan. 389, 26 Pac. 735, where it was held:

"A letter of instructions from one agent to another cannot be construed into a contract between the principal and a third party respecting the business referred to in the letter." (Syl. ¶ 2.)

In that case agents of the defendant Johnson wrote the officers of the bank where Johnson had his deposit promising to pay the debt of another, which debt was the commission for the sale of the land by plaintiff for the owner, a third party, Johnson being the mortgagee. Two points of difference exist between the facts in that case and in the case at bar. Here the debt concerning which the letter was written was that of the defendant, and not a third party, and agents of corporations are different from those of individuals because corporations cannot speak or write for themselves, and their only communications must of necessity be by officers or agents. The act of the manager in writing this letter was the act of the defendant company.

In the case of *Willey v. Goulding*, 99 Kan. 323, 161 Pac. 611, it was held:

"A sufficient memorandum in writing to satisfy the statute of frauds may consist of a letter from the owner of real estate to his agent, offering to lease it on stated terms, followed by an oral acceptance by the tenant." (Syl. ¶ 3.)

In the opinion, in treating this question, it was said:

"The fact that it was addressed and delivered to the agent of the writer and not to the other party to the contract does not render it inadequate for the

purpose. . . . And the offer having been made in writing, signed by the party sought to be charged, an oral acceptance was sufficient." (pp. 326, 327.)

In 13 C. J. 277 it is said:

"A contract may be formed by accepting a paper containing terms. If an offer is made by delivering to another a paper containing the terms of a proposed contract, and the paper is accepted, the acceptor is bound by its terms. . . ."

On page 305 of the same volume it is said:

"Signature is not always essential to the binding force of an agreement. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways; and unless a contract is required by statute or arbitrary rule to be in writing, it need not be signed, provided it is accepted and acted on."

The exception just mentioned was applied in the case of *Petrie v. Sherman County High School,* 134 Kan. 464, 7 P. 2d 104, where the school-district officers employed a teacher and noted the fact on the minutes of the board. The statute required such contract to be in writing and to be filed in the clerk's office, and since that was not done it was held not to be a contract as required by the specific statute.

In 14a C. J. 426 it is said that for many purposes the officers and agents of a corporation may employ persons to perform services for the corporation, and on the next page it states that such authority to employ includes a complete contract as to the amount of compensation "and also to renew the employment, and to increase the compensation of an employee in order to retain him."

In 6 R. C. L. 641 it is said:

"A written contract, not required to be in writing, is valid if one of the parties signs it and the other acquiesces therein. Acceptance of a contract by assenting to its terms, holding it and acting upon it, may be equivalent to a formal execution by one who did not sign it." (See, also, *Miller v. Railroad Co.,* 58 Kan. 189, 48 Pac. 853; *Hollis v. Burgess,* 37 Kan. 487, 15 Pac. 536; *Strong v. Thurston,* 107 Kan. 368, 191 Pac. 575; *Van Doren v. Cement Co.,* 92 Kan. 470, 141 Pac. 560; *Reid v. Kenworthy,* 25 Kan. 701; and 27 C. J. 301.)

In order for the letter to be considered a written contract it must contain all of its necessary terms. A written contract is thus defined in 37 C. J. 763:

"A written contract is generally defined as one which in all its terms is in writing, and a contract partly in writing and partly oral is in legal effect an oral contract, an action on which is governed, as to the period of limitation, by the statute governing verbal contracts generally. . . ."

In the case of *Ehrsam v. Brown,* 64 Kan. 466, 67 Pac. 867, there

was a letter making a proposition for the purchase of certain machinery and an acceptance by letter, the matter of warranty not being mentioned in either letter, and it was held:

"Whether parties have committed their entire contract to writing is a question for the determination of the court. In this determination the writing itself is the guide. If, on its face, it imports to be complete—that is, if it contains such language as imports a complete legal obligation between the parties—it is complete, and parol evidence will not be admitted to extend its obligations to cover matters upon which the writing is silent." (Syl. ¶ 2.)

We have no hesitancy in concluding as did the trial court, as shown by the instructions given, that the entire contract between plaintiff and defendant in the case at bar was committed to writing in the letter sent by the defendant company to its agent at Wichita, and its terms were accepted by the plaintiff when a copy of the letter was given him.

Appellant insists that the claimed guarantee for the year 1931 cannot be found in the letter, citing the following clause therein as being insufficient for that purpose:

". . . it will be satisfactory to consider his drawing account at the rate of $225 per month for the year 1930-1931 if he remains in our employ."

In construing the statement "year 1930-1931" it will be proper to take into consideration the statute upon statutory construction, G. S. 1935, 77-201 (3), which is as follows:

"Words importing the singular number only may be extended to several persons or things, and words importing the plural number only may be applied to one person or thing. . . ."

Besides, there are several other references to the question of time in the letter: one is "at the end of this year." This follows a statement about a certain payment "to be effective July 1, 1930," showing that calendar years were in contemplation instead of fiscal or other years consisting of parts of two calendar years. Another statement in the letter is "$2,700 for the whole year"; still another is "for the length of time as specified." And twice the words "per year" are used. We think the letter plainly and intentionally covers the two calendar years, 1930 and 1931, and therefore there was a written contract for the guaranteed salary for the year 1931.

As to the giving and refusing to give certain instructions to the jury, we find no error. As to the failure to submit to the jury the four special questions asked by defendant, we have before us no ruling of the trial court thereon, and therefore nothing to review.

The judgment is affirmed.