**MEANS et al. v. DIERKS.**

No. 3979.

United States Court of Appeals
Tenth Circuit.

Feb. 17, 1950.

Benj. F. Hegler, Wichita, Kan. (Wm. G. Boatright, Kansas City, Mo., and M. P. Shearer, Wichita, Kan., on the brief), for appellants.

George Siefkin, Wichita, Kan. (Robert C. Foulston, Jr., Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Jay Means and Wilma Means, residents of the State of Missouri, brought this action against Dierks to recover the value of one-fourth of a wheat crop raised on a quarter section of land owned by them in Kearney County, Kansas, together with the cost of transporting to an elevator other wheat belonging to plaintiffs. From a judgment in favor of the defendant denying plaintiffs' right to the crop share, this appeal was taken.

The material facts are generally undisputed. Dierks, for a number of years prior to 1945, had leased two quarter sections of land belonging to the plaintiffs but had raised no crops on one of the quarter sections which was in sod. On October 19, 1945, Dierks wrote a letter to Jay Means in which he stated that he would break the sod on the unbroken quarter the following spring "for $2.00 per acre and you get one-fourth of the crop or break it for all the first paying crop. Either way we don't care that is for you to decide." On January 24, 1946, Jay Means wrote a letter to Dierks, reading in part as follows: "I have your letter of October 19th, 1945 wherein you state that you would break out the quarter of sod in the spring for $2.00 per acre, and we are to get one-fourth of the crop. I then wrote you asking if you would break it and deduct $2.00 per acre from my share of the 1st crop and give me the balance, if any. I do not seem to have had an answer to that and really would like to have you confirm this arrangement." On February 18, 1946, Dierks answered this letter in which he said: "In regard to breaking your land I will break it for $2.00 per acre to be paid when the land is broke and you get ¼ of the crop just as I rent the other land. The country out here is blowing away again and I wouldn't want to gamble on getting my pay out of the first crop." From this correspondence, it is evident that Dierks offered to break the sod for $2 per acre payable when the work was completed or for one-fourth of the first crop raised on that land. He gave to the plaintiffs the choice of accepting either proposition.

On March 5, 1946, Jay Means wrote a letter to Dierks which stated in part: "Since you have now indicated that you will break the quarter for $2.00 per acre to be paid when the land is broken and we to get one-fourth of the crop, I will agree to those terms providing the work is done this spring and ask you to go ahead and get the job done." On April 1, 1946, and before any work was done by Dierks, the plaintiffs made a trip to Kansas and went to the farm where Dierks lived. At that time an agreement was reached whereby the defendant was to farm all the lands of the plaintiffs the following crop year. It was agreed that Dierks would break the sod on the quarter section in question and prepare the same for farming that year and that the plaintiffs would pay $2 an acre for the breaking of this quarter section and receive one-fourth of the crop raised on it. The $2 per acre was to be paid as soon as the work was completed. On the other lands

the plaintiffs were to receive as rental one-fourth of the crop raised. It was understood that the terms of this agreement were to be put into the form of a written lease which was to be prepared at the office of a Mr. Loucks in Lakin, Kansas. The plaintiffs went to Lakin and submitted the facts to Loucks who prepared the lease. Dierks telephoned that he was unable to be in Lakin that day and requested the plaintiffs to sign two copies of the prepared lease and advised them that he would obtain the same later and afterwards forward one executed copy to them in Missouri. A short time later Dierks obtained from Loucks the copies of the lease which had been executed by the plaintiffs but did not sign them. He kept them in his possession. Dierks admitted that the lease stated the agreement of the parties arrived at on April 1st, and covered the rentals which the plaintiffs were to receive for the lands for the following crop year. It contained this provision: "It is understood and agreed by and between the parties hereto that the Southeast Quarter of Section 11, Township 21 South, Range 38 West of the Sixth Principal Meridian, above described, is now in sod and the second party agrees to break said land in the Spring of 1946, summer-fallow the same and plant it to wheat in the Fall of 1946, and to deliver one-fourth of the grain raised thereon, as stipulated in paragraph number Three. It is further agreed that the parties of the first part are to pay the party of the second part two and no/100 Dollars ($2.00) per acre for the breaking of said land, cash, as soon as said land is broken out."

Immediately upon receipt of the lease from Loucks, Dierks commenced breaking the land and completed the work about April 13th. He also farmed the remaining lands of the plaintiffs and paid the rental provided for in the lease. It is apparent that he relied upon the terms of the lease for his pay, as he wrote the plaintiffs immediately after he finished the breaking requesting payment of the $2 per acre. He said that he was not going to sign the lease until the $2 per acre was paid. On

May 12th, the defendant again requested the payment of $2 per acre for his work, and on May 21st, Jay Means replied that he was "prepared to carry out my part of the agreement" and requested the defendant to execute and forward him the lease. Dierks did not execute the lease and forward a copy to the plaintiffs. The $320 due for the breaking of the sod was not paid at that time. There was no further correspondence between the parties and nothing was done or said relating to the matter until after the 1947 crop had been harvested. On July 30, 1947, Dierks wrote Jay Means, "This is to advise you that your wheat has been harvested, and your grain is piled in the field." Upon receipt of this letter, Jay Means again went to the farm and was advised by Dierks where his share of the crop was and that he could do with it as he saw fit. Jay Means then tendered $320 to Dierks for the breaking of the one quarter section which Dierks refused to accept, stating that Means was not entitled to any of the crop from that land. The pile of wheat which he referred to was grown on the other quarter section. Means then removed this grain to an elevator at a cost of $208.11. The prepared lease provided that the lessee was to deliver the lessors' share of the crop at an elevator at Leoti, Kansas. Dierks admitted his liability for this amount and judgment was entered for the plaintiffs accordingly. The court concluded that the lease which Dierks had failed to sign was not binding upon the parties and looked to the correspondence between them to determine the agreement, and made this finding: "In the fall of 1945 correspondence was had between the plaintiff, Jay Means, and the defendant concerning the one quarter of land which was in sod. This correspondence extended from October 19, 1945, to March 5, 1946. In substance, Jay Means desired the quarter section of sod land broken and planted to wheat. The defendant offered to break the land for (a) $2.00 per acre to be paid in cash as soon as the breaking was completed, the land owner to get one-fourth (¼) of the crop, or (b) he would break the land for all the first paying crop.

Plaintiffs in his letter of March 5, 1946, agreed to proposition (a)."

The District Court took the view that the contract under which the sod was broken gave the plaintiffs an alternative as to payment; that plaintiffs agreed to the alternative to pay $2 per acre for the breaking and receive one-fourth of the crop raised on the land, but when they failed to pay the $2 at the time required in the contract they lost this right of election and the right of election passed to Dierks. As we view the situation created by the correspondence, Dierks submitted an offer which was in the alternative and plaintiffs accepted or agreed unconditionally to one of the alternatives in that offer. It created a binding contract between the parties in which there was no alternative. Plaintiffs were to pay Dierks $2 per acre for the breaking of the sod; he was to deliver one-fourth of the crop raised on the land as rental. There was no provision in the agreement that plaintiffs were not to receive the crop rental if they failed to pay the $2 per acre within a certain time.

In addition, the agreement reached at the April 1st meeting was not substantially different from that which resulted from the correspondence. The prepared lease which admittedly contained the agreement of the parties contained no alternative to be exercised by either of the parties. It bound plaintiffs absolutely to pay $2 per acre for the breaking of the sod and bound Dierks to deliver to the plaintiff one-fourth of the crop raised on that land. Dierks testified: "it was understood and agreed that he was to pay me $2 an acre immediately upon the breaking of this land, and then to receive one fourth of the crop, and they went over and fixed up this lease to that effect." We doubt the correctness of the court's conclusion that the written contract was not binding on the parties. From the evidence it ap-

pears that Dierks commenced the breaking of the sod after the execution of the lease by the plaintiffs and after he had received the same from Loucks. It also appears that the other lands of the plaintiffs were farmed by the defendant and the crop rentals delivered according to its terms. The defendant admits that had the $2 per acre been paid when he completed the breaking, that the written lease would have been effective and that he did not sign it because he wanted to "wait and and see if Mr. Means pays for this as he agreed to do and as the lease said." The law is well settled that a lease signed by a leasor alone is binding on the lessee when it is delivered and there is a general acceptance of it and lessee takes possession of the property and acts under the terms of the lease.[1] This is the ordinary law of contracts.[2] In J. P. C. Petroleum Corporation v. Vulcan Steel Tank Corporation, 10 Cir., 118 F.2d 713, 716, this court said: "And a contract becomes binding where it is executed by one party, is forwarded to the other for execution or approval, is received and retained by the latter but never formally signed or approved by him, and both parties act in reliance upon it as a valid contract. Rock v. Fisher, 91 Okl. 220, 216 P. 668; Girard Life Insurance, Annuity & Trust Co. v. Cooper, 162 U.S. 529, 16 S.Ct. 879, 40 L.Ed. 1062; Id., 8 Cir., 51 F. 332; First National Bank v. Sleeper, 8 Cir., 12 F.2d 228; Dunkel Oil Corporation v. Independent Oil & Gas Company, 7 Cir., 70 F.2d 967."

It makes no difference whether we accept the April 1st contract or rely upon the previous correspondence and the court's finding. We arrive at the same conclusion. Restatement, Contracts, Sec. 26; Post v. Davis, 7 Kan.App. 217, 52 P. 903; Willey v. Goulding, 99 Kan. 323, 161 P. 611. That is, the sod breaking was done under an agreement requiring the plaintiffs to pay $2 per acre for the same

1. 32 Am.Jur., Landlord and Tenant, Sec. 37; 51 C.J.S., Landlord and Tenant, § 217(c); Goddard v. Morgan, 193 Wash. 83, 74 P.2d 894; Kidder v. Greenman, 283 Mass. 601, 187 N.E. 42, 88 A.L.R. 1370, 1380; Munford v. Humphreys, 68 Cal.App. 530, 229 P. 860; Baker v. Readicker, 84 Kan. 489, 115 P. 112.

2. 12 Am.Jur., Contracts, Sec. 61; Fey v. Loose-Wiles Biscuit Co., 147 Kan. 31, 75 P.2d 810, 812.

immediately upon the completion of the work and requiring Dierks to deliver to plaintiffs one-fourth the crop raised on the land. These covenants are independent of each other. The failure of one party to perform does not relieve the other of performance. Williston on Contracts, Vol. 3, Sec. 890; Restatement, Contracts, Sec. 290. If either party failed to perform its part of the contract, the injured party would have a cause of action against the defaulting party for the amount due and any damages which it might have suffered by reason of the default. Seapy v. Smart, 102 Kan. 294, 169 P. 1151, 1152. In such case where the contract provided for the payment of money only, ordinarily the failure to pay the amount when due, the damages are limited to interest from the date of default as provided for in the contract or at the legal rate.[3]

Judgment is reversed, and the District Court is instructed to enter a judgment in accordance with the views herein expressed.

---

3. Restatement, Contracts, Sec. 337; Williston on Contracts, Vol. 5, Sec. 1410; 15 Am.Jur., Damages, Sec. 57; Loudon v. Taxing District, 104 U.S. 771, 26 L. Ed. 923; Minick v. Associates Inv. Co., 71 App.D.C. 367, 110 F.2d 267; Hupe v. Sommer, 88 Kan. 561, 129 P. 136, 138, 43 L.R.A.,N.S., 565.