[No. 20415.  Department One.  May 6, 1927.]

WENATCHEE DISTRICT COOPERATIVE ASSOCIATION,
*Respondent,* v. A. J. THOMPSON *et al.,*
*Appellants.*[1]

[1] APPEAL (475) — SUBSEQUENT APPEAL — QUESTIONS CONCLUDED.
Where a cause was reversed for error in requiring the defendant
to elect between affirmative defenses, and remanded with direc-
tions to try out the issues raised in the "third" affirmative de-
fense, upon a subsequent appeal the decision is conclusive on
all other issues.

[2] CONTRACTS (151)—BREACH—WAIVER OF OBJECTIONS.  A member
of a fruit grower's association, who waives the condition that a
marketing contract must be signed by a certain number of
growers, and thereafter delivers a crop to the association, is
bound by the waiver, regardless of whether he knew of the
failure to perform the condition.

Appeal from a judgment of the superior court for
Chelan county, Parr, J., entered July 7, 1926, in favor
of the plaintiff, in an action for an injunction and dam-
ages.  Affirmed.

*O. P. Barrows,* for appellant.

*C. B. Hughes* and *Chadwick, McMicken, Ramsey &
Rupp,* for respondent.

PER CURIAM.—This is the second appeal in this case.
The opinion on the former appeal is reported in 135
Wash. 91, 237 Pac. 19.  The controversy arose out of a
co-operative association contract signed by A. J.
Thompson.  In an action to enforce it, brought by the
association against Thompson and others, the defend-
ants answered by general denials and three affirmative
defenses.  The trial court held that the first and third
affirmative defenses were inconsistent and required the
defendants to elect between them.  They chose the first.

[1]Reported in 255 Pac. 918.

Judgment was for the plaintiff. The defendants appealed, and this court held that there was no inconsistency in the defenses and reversed the case for that reason. Upon the new trial, judgment was for the plaintiff, and defendants have again appealed.

[1] Notwithstanding some arguments to the contrary on behalf of the appellants, we think it is plain that, upon the record and opinion on the former appeal, all points in the case were decided against the defendants, appellants, except the controversy as to their third affirmative defense. The directions on remanding the case were certain, as follows:

"The case is remanded with directions to try out the issues raised by the allegations in the third affirmative defense."

That is all the case was sent back for.

[2] The third affirmative defense was that the contract was never binding, because the association had failed to obtain sufficient signers of similar contracts, as provided for by § 9 of the contract. In reply, the respondent alleged that the defendant Thompson had signed and delivered a written waiver of this provision of the contract. The defendant Thompson admitted he had signed a written waiver, but claimed that, in doing so, he had thought and intended that it should apply to paragraph 9 of another form of contract gotten out by the association, which was entirely different as to paragraph 9 in the original contract; that is, that his signing the waiver as to the original contract was a mistake.

When the case was called for trial this time, the respondent admitted it had not procured the number of signers required by § 9 of the contract and stated that it would rest its case upon the allegation and fact of waiver. The court tried that issue and found in

favor of the association, that the waiver of § 9 of the contract had been signed and delivered by respondent Thompson without any mistake on his part. The proof abundantly and clearly showed that the subsequent form of contract, § 9 of which it was alleged and claimed by Mr. Thompson that his waiver referred to, was not, as a matter of fact, in existence, that is, it had not been prepared or printed until months after the date of the execution and delivery of the waiver, and that at the date of the waiver there was no other contract in existence to which it could refer than the one claimed by the respondent. Having waived the provisions of § 9 of the contract, Thompson's relations with the association were the same as if he had actually known at that time the fact that the required number of signers or subscribers originally intended had not been procured. He said, in effect, that he would accept the contract with § 9 eliminated, and having thereafter dealt with the association by delivering his crop to it in the year 1921 to be handled under the contract, we think he is bound by it, and that the judgment appealed from should be and it is affirmed.