[No. 20426. Department One. May 10, 1927.]

## I. EDWARD TONKON, *Appellant*, v. F. D. SMALL *et al.*, *Respondents*.[1]

[1] PRINCIPAL AND AGENT (34)—RIGHTS AS TO THIRD PERSONS—IMPLIED AUTHORITY—PURCHASES. The authority of a caretaker to purchase paint on credit is a question for the jury, where it appears that he was directed to paint certain machinery, left in his care, and was not furnished the money to procure the paint, and had, on previous occasions, been supplied with other goods on credit without any objection.

[2] ACCOUNT STATED (7)—EVIDENCE. Special findings of a jury to the effect that an account had been stated and closed, and that a subsequent purchase was an independent transaction, supported by substantial evidence, is conclusive on the court that the account was not open and current.

[3] ACCOUNT (11) — LIMITATION OF ACTIONS (39) — PAYMENT — MUTUAL ACCOUNTS. After a running account is stated and closed, a subsequent independent transaction after the mutual dealings between the parties had ended was not a purchase on a mutual, open and current account, and would not toll the statute of limitations on the account stated.

Appeal from a judgment of the superior court for Clark county, Simpson, J., entered June 2, 1926, in favor of the defendant, notwithstanding a verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

[1]Reported in 255 Pac. 1033.

*McMaster, Hall & Schaefer, Dey, Hampson & Nelson,* and *Andrew Koerner (Louis Schaefer,* of counsel), for appellant.

*. Miller, Wilkinson & Miller,* and *John D. Currie,* for respondents.

FULLERTON, J.—During the year 1921, and for some years prior thereto, the respondents, F. D. Small and D. C. Urie, as copartners, operated a fish cannery at Noyo, near Ft. Bragg, on the California coast. The operation of the cannery was seasonal, usually commencing in May of each year and continuing until sometime in September. The firm purchased the fish which they canned from independent fishermen who operated off the coast. The fishermen used gasoline power boats in their operations, and it was the practice of the copartners to furnish them with such gasoline and oil as they needed for their boats. The copartners purchased the gasoline and oil from the Standard Oil Company of California. It was the custom of the parties to settle the account as often as the end of each month, when payment would be made of the amounts found due. This custom was followed, during the year 1921, up to and including the month of June of that year. Purchases were made during the month of August of the same year, at the end of which month the copartners closed their cannery, which was earlier in the year than was their custom to close, the reason being a depression in the general market for canned fish. The copartners and the oil company had a settlement of their account at the end of the month of August. It was found on this settlement that the copartners had purchased gasoline and oil during the month of the value of $1,475.67, and that they had on hand gasoline and oil of the value of $55.08. The oil company accepted a return of this

gasoline and oil at its cost price, leaving a net balance due and owing it by the copartners of $1,420.59. This balance was not paid.

The copartners did not operate the cannery during the year 1922. On closing their operations in 1921, they left the plant in the charge of one Nicholas as its caretaker, who continued to act as such from that time until sometime in the year 1922. In the month of April, 1922, Nicholas was directed by the copartners to paint certain of the machinery used in the plant with an enamel paint; they did not, however, furnish him with the paint nor the means by which to purchase it. For use in complying with the direction, Nicholas ordered a can of Oronite Enamel Paint from the oil company, which the oil company furnished him, charging the cost ($4.45) to the copartners. Nicholas used the paint, or some part of it, upon the machinery of the plant.

Later on, the oil company assigned its entire account to the appellant, I. Edward Tonkon, who in January, 1925, began an action in Clark county to recover thereon. The complaint was in form that of an ordinary complaint upon an open account. The copartners defended against the account for gasoline and oil on the ground that the account became an account stated in August, 1921, and that recovery thereon was barred by the statute of limitations. Against the account for the enamal paint, they defended on the ground that Nicholas was without authority to make a credit purchase on their behalf.

The cause was tried by the court sitting with a jury. The jury, under the direction of the court, returned a special and a general verdict. In substance, the special verdict was in accord with the contention of the copartners. The general verdict was in favor of the appellant for the value of the enamel paint.

The appellant moved for judgment notwithstanding the verdict for the full amount of his demand, and the respondents made a similar motion for judgment in their favor with reference to the general verdict returned by the jury. The court granted the latter motion, entering a judgment the effect of which was to dismiss the action.

[1] The appellant first assigns error upon the ruling of the court in which it granted the respondents' motion for judgment notwithstanding the verdict and dismissed his action. It is our opinion that this assignment is well founded. Since the caretaker was directed by the respondents to paint the machinery, and was not furnished with paint for the purpose or with means by which to procure it, it would seem not to be an unreasonable inference that they expected him to purchase it on their account. The question was one for the jury to determine, and, since they found that there was authority to incur the cost, we think it too much to say that there was no substantial evidence in support of the finding.

But the respondents say that they gave the agent in charge of the oil company's business at Noyo, and who made the sale of the paint to the caretaker, specific instructions not to sell goods to anyone on their account. But as we read the record, the directions were not so exclusive. The oil company had on occasions furnished gasoline and oil on the respondents' account directly to fishermen, and this was the matter that was then in the minds of the parties. The necessity for the enamel paint had not then arisen, and it could not for that reason have been the subject-matter of the direction at that time. It is in evidence, moreover, that the oil company had on a number of occasions during the closed season supplied the respondents' caretaker with items

of this sort and no question had ever been made by the respondents concerning them. It is in evidence also that this particular purchase was treated in the way usual in such instances; a statement was made out showing the purchase and forwarded to the respondents.

[2] In his second assignment of error, the appellant complains of the refusal of the court to grant his motion for judgment notwithstanding the verdict, but in this ruling of the court we think there was no error. The appellant instituted his action on the theory that the account was mutual, open and current, and that the statute of limitations began to run from the date of the last item. The jury, as we have shown, found to the contrary of this theory; they found that a balance was struck between the parties as to their mutual dealings at the end of August, 1921, and that the account became at that time an account stated; further finding, in effect, that the last item purchased was an independent transaction, and formed no part of the mutual dealings between the parties. There is substantial evidence in the record, as we view it, which supports these findings. The facts, as found by the jury, were, therefore, conclusive upon the trial court, and it follows that it did not err in refusing to grant the appellant's motion on the theory that the account was mutual, open and current.

[3] The appellant argues, however, that the account of August, 1921, even if it be treated as an account stated, became an item in a new account by reason of the subsequent purchase in the following year, and that the statute of limitations began to run from the date of the subsequent item. There are cases which maintain the doctrine that where there are continuous mutual dealings between parties, with a balance struck at

stated intervals, and the balance is carried over into a new current account, the balance becomes an item in the new account and the statute of limitations begins to run at the date of the last item of the new account. But such was not the situation here. After the settlement, there were no mutual dealings between the parties. The subsequent purchase of the paint was a separate transaction, and not a purchase on a mutual, open and current account. Being so, it cannot be held to toll the statute of limitations as to the account stated.

In this state the statute of limitations runs upon an account stated in three years. *Hamlin v. Flick*, 130 Wash. 126, 226 Pac. 484. From the dates given, it will be seen that more than three years elapsed between the date of the account stated and the commencement of the action. There can, therefore, be no recovery upon the account stated. Against the subsequent item of $4.45, the statute had not run, and, as we find the evidence supports the verdict of the jury as to this item, a recovery should have been allowed thereon.

The judgment is reversed, and the cause remanded with instructions to enter a judgment in accordance with the verdict of the jury.

MACKINTOSH, C. J., FRENCH, MAIN, and MITCHELL, JJ., concur.