[No. 34187. *En Banc.* July 24, 1958.]

HOMER E. EVANS, *Respondent,* v. YAKIMA VALLEY GRAPE GROWERS ASSOCIATION, *Appellant.*[1]

[1]Reported in 328 P. (2d) 671.

*Cheney & Hutcheson*, for appellant.

*Kenneth C. Hawkins* and *Chaffee & Aiken*, for respondent.

MALLERY, J.—The plaintiff Evans obtained a judgment upon three causes of action against the defendant, Yakima Valley Grape Growers Association, a corporation engaged in marketing the crops of its grape-grower members. The defendant appeals.

That part of respondent's first cause of action with which we are here concerned arose out of an oral contract of employment, under the terms of which he served as appellant's manager upon a commission basis.

The respondent terminated his services as manager on May 27, 1948, and commenced this action for commissions on January 28, 1953, more than three years thereafter.

The first cause of action is barred by the three-year statute of limitations, RCW 4.16.080 (3), Rem. Rev. Stat., § 159 (3), which relates to:

"(3) An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . ."

The controversy between the parties was not over the *existence* of an oral contract of employment, but as to its terms and the amount due thereon. No exhibit in the case purports to be an executed written contract of employment upon which the suit is brought.

The trial court acted upon the theory that certain

exhibits relating to the oral contract of employment are written instruments which bring the action within the six-year statute of limitations. RCW 4.16.040 (2), Rem. Rev. Stat., § 157 (2), is the six-year statute. It applies to:

"(2) An action upon a contract in writing, or liability express or implied arising out of a written agreement."

The trial court's theory is expressed in the following finding of fact:

". . . That said agreements are evidenced in writing and the defendant's liability thereon arises upon a written instrument, to-wit: *the minutes of the director's meetings of the defendant* and the audit of 1948 approved and adopted by the defendant. That according to said audit as corrected by the testimony, there was due and owing to Mr. Evans, the plaintiff herein, from and after May 27, 1948, the sum of $3,400.40 on account of the balances due under said agreements pertaining to commissions and under said agreement pertaining to the sale of office furniture." (Italics ours.)

The audit referred to by the court was made by the appellant's auditors and is contained in their report, which is a part of the association's records and which, in schedule H, purports to set up the balance due the respondent.

The respondent contends the facts in the court's finding bring him within the rule of *Voorhees v. Nabob Silver-Lead Co.*, 174 Wash. 5, 24 P. (2d) 114. We do not agree. The following determinative fact is quoted from the *Voorhees* case and distinguishes it from the instant case:

"On or about August 1, 1927, appellant audited, approved and allowed the claim by resolution of its board of directors, duly entered in the minutes of the proceedings of the corporation, and issued its *voucher in writing* in the sum of $750 for the balance of such attorneys' fees, and has failed, neglected and refused to pay the same or any part thereof. The demand was for $750, together with interest at the rate of six per cent per annum from August 1, 1927." (Italics ours.)

The *Voorhees* case was analogous to an action upon a promissory note for the payment of a liability arising out of an oral contract. This is made to appear in this further quotation from that case (pp. 10, 11):

"Although the trial court referred to the instrument as an account stated, that is immaterial. The basis of the suit is *upon the written instrument*. . . .

"This action was instituted *on the instrument* above described by the filing of the complaint in the office of the clerk of the court below on January 22, 1932. Being governed by the six-year statute of limitations, it was well within the period of limitations." (Italics ours.)

There is no voucher, promissory note, check, or other instrument of similar import in the instant case. The action is predicated upon appellant's obligation to pay its liability under the oral contract, which is governed by the three-year statute.

■ The appellant's audit of its books and the approval thereof by the board of directors amounts to no more, in any event, than an account stated, which is under the three-year statute of limitations. *Hamlin v. Flick*, 130 Wash. 126, 226 Pac. 484; *Tonkon v. Small*, 143 Wash. 665, 255 Pac. 1033.

The instant case is within the purview of *Aall v. Riverside Irr. Dist.*, 157 Wash. 442, 289 Pac. 22. That case was also an action to recover for services rendered under an oral contract, in which the plaintiff relied upon corporate minutes to bring him under the six-year statute of limitations. The minutes in question contained the following entry:

" 'The Board accepted Mr. Aall's proposition to take charge of the survey at $250 per month . . .' "

This language shows an employment and fixes the duties and salary thereof. Nevertheless, the court went on to say:

"We conclude that appellant's employment contract was not wholly in writing and therefore not in writing within the meaning of Rem. Comp. Stat., § 157, subd. 2 [RCW 4.16.040 (2), Rem. Rev. Stat., § 157 (2)]."

■ The statute in question requires a "contract in writing," or "a written agreement," not some *ex parte* memorandum related thereto. In *Bicknell v. Garrett*, 1 Wn. (2d) 564, 96 P. (2d) 592, 126 A. L. R. 258, we said:

"It is obvious that we cannot find that it is an express liability arising out of a written agreement, unless we can see or know the contents of the agreement. It is equally obvious that we cannot hold that the liability sued upon is an implied liability arising out of a written agreement, unless *the agreement relied upon is produced* so that we may determine whether its language warrants the implication. The action, therefore, must fail." (Italics ours.)

Since the first cause of action is barred by the three-year statute of limitations, the judgment thereon is reversed.

The respondent's second cause of action is upon a written contract, under the terms of which he agreed to sell his grape crops to the appellant for ten years. It provided:

"3—That the Grower agrees to accept and the Association agrees to return in cash the general market price, same as other juice factories and processors pay."

Respondent delivered his 1948 crop in the amount of 84,373 pounds, for which he was paid at the rate of twenty dollars a ton. The market price was forty dollars a ton. He was given judgment for the balance owed in the amount of $843.73 with interest at six per cent.

The appellant's appeal on the second cause of action, with one exception, raises only questions of fact. The trial court's findings of fact are adverse to the appellant, and we find them to be supported by the record.

The appellant changed its bylaws so that the purchase price of grapes would be paid for out of a crop pool of all the members, instead of by the above contract method. The court correctly found that the respondent, who did not vote for the amendment, was not bound by it and could, therefore, enforce his rights under his contract. 8 Fletcher Cyclopedia, Corporations (Perm. ed.) 720, § 4188.

The appellant contends that the respondent waived his contract rights and is estopped to assert them because, as manager of the association, he advised other members to vote for the change in the bylaws here in question. This contention is unsound. Such an act is without legal significance.

The judgment on the second cause of action is affirmed.

The respondent's third cause of action is predicated upon what the appellant designates as *redeemable certificates of indebtedness*. These written instruments are the unqualified promises of the appellant to pay the amount shown on the face thereof in ten years to the party named therein. They were given in payment for grapes purchased from members of the appellant and are transferable upon its books. The respondent is the owner of a number of these certificates, which he obtained either from the sale of his own grapes or by assignment from other members.

A chain reaction here comes into play. When the appellant refused to pay the respondent for his 1948 crop and breached its contract, as set out in the second cause of action, the respondent, acting upon the breach, refused to deliver subsequent crops of grapes. This he had a right to do, but the appellant treated his refusal as a breach of his contract and, acting thereon, repudiated its obligation on the redeemable certificates of indebtedness owned by the respondent. This the appellant had no right to do.

Accordingly, respondent brought his third cause of action for the immediate payment of the certificates by reason of appellant's repudiation of them, which he had a right to do and for which the court gave him judgment.

Since only questions concerning these facts as found by the court are raised upon the appeal of the third cause of action, and we find them to be supported by the record, the court was correct in granting judgment for respondent and denying appellant any relief on its cross-complaint.

The judgment on the third cause of action is affirmed. No costs shall be allowed to either party.

DONWORTH, WEAVER, ROSELLINI, and OTT, JJ., concur.

FINLEY, J. (dissenting)—Three causes of action are involved in this case. As each presents different questions of law, they must be considered separately.

The first cause of action is based on two distinct contracts: (1) a contract of employment, and (2) a contract of sale of

office furniture and supplies. Plaintiff Evans alleged, and the trial court found, that both contracts are sufficiently evidenced in writing by the records of the board of directors of the association as to make the six-year, rather than the three-year, statute of limitations applicable to any cause of action based on the contracts.

The legal question presented by the first cause of action is whether the minutes of meetings of a corporation or association can constitute a written instrument so as to take the contract, so established, out of the three-year statute of limitations and into the six-year statute of limitations. The majority answers this question in the negative. I disagree.

Before proceeding further, I shall for convenience and clarity set out the pertinent statutes of limitation.

RCW 4.16.040 (2) limits to within *six* years:

"An action upon a contract in writing, or liability express or implied arising out of a written agreement."

RCW 4.16.080 (3) limits to within *three* years:

"An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . . ."

Both of these statutes were originally enacted by the territorial legislature in 1854. Laws of Washington (1854), § 3(2) and § 4(3), p. 363. It is clear from a reading of the statutes and from the fact that they were passed simultaneously that they are *in pari materia*, and that they should be construed together in determining whether a certain cause of action is limited to three years (which is the ultimate question presented by the first cause of action in the case at bar). See 2 Horack's Sutherland on Statutory Construction (3d. ed.), § 5202, pp. 535 through 539. A reading of the cases concerning the application of the proper statute of limitations reveals that this court has always construed these two statutes together in determining whether the three-year statute of limitations cut off a cause of action. See *Ingalls v. Angell* (1913), 76 Wash. 692, 137 Pac. 309; *Voorhees v. Nabob Silver-Lead Co.* (1933), 174 Wash. 5, 24

P. (2d) 114; *DeBritz v. Sylvia* (1944), 21 Wn. (2d) 317, 150 P. (2d) 978.

The statute of limitations is not a defense to the merits of the cause of action; it is a procedural rule enacted and applied to prevent fraud and error and to promote the speedy settlement of disputes. Courts do not look with favor on the statutes of limitation as a defense. In *Bain v. Wallace* (1932), 167 Wash 583, 10 P. (2d) 226, this court said:

"While a plea of the statute of limitations is not an unconscionable defense (*Morgan v. Morgan*, 10 Wash. 99, 38 Pac. 1054), 'courts will not now indulge in any presumptions in its favor,' *Paul v. Kohler & Chase*, 82 Wash. 257, 144 Pac. 64; and

" ' . . . the proper rule is that the statute of limitations, although not an unconscionable defense, is not such a meritorious defense that either the law or the facts should be strained in aid of it.' *Hein v. Forney*, 164 Wash. 309, 2 P. (2d) 741."

To the same effect, see *Cannavina v. Poston* (1942), 13 Wn. (2d) 182, 124 P. (2d) 787.

What constitutes a written contract? Professor Corbin has this to say on that subject (1 Corbin on Contracts 84, 85, § 31):

"The term 'written contract' has no single and uniform meaning, no one 'correct' meaning. In this it is no different from all other terms that are in common use in any language and in any country. The meaning that is intended to be conveyed by such a term, when used by a party to a transaction or by a legislature in a statute, must be determined by the usual processes of interpretation in the light of all the relevant surrounding circumstances. The same is true as to the meaning that is in fact conveyed to one who hears or reads it. When such meanings, so determined, are at variance it depends upon our opinions of policy and justice whether legal effect shall be given to any one of them or to none. Often the choice will depend primarily upon the purpose with which the term is used, whether by a contractor or by a legislature. *The considerations affecting the determination are very different, when the issue is as to the existence of a prerequisite to obligation, from those that are decisive when the application of the so-called 'parol evi-*

*dence rule' or of some specific 'statute of limitations' is in question.*

" . . .

"If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract. . . . . .

"An *unsigned agreement all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a written contract.* It is true that the fact that they have expressed unconditional assent must be proved by testimony of their unwritten expressions; it is not evidenced by the writing itself. But the same is true of a writing that has been signed by both parties. Writing does not make a contract, not even if the writing bears both signatures. The fact that a man has signed an apparently complete expression of the terms of a contract is indeed strong evidence that he is thereby expressing his unconditional assent. In the absence of all other evidence to the contrary, it is almost enough; but if there is other evidence to the contrary, the signature itself is not conclusive." (Italics mine.)

For Washington cases to the same general effect, see (With respect to the statute of limitations)—*Voorhees v. Nabob Silver-Lead Co., supra; DeBritz v. Sylvia, supra;* and *Geyen v. Time Oil Co.* (1955), 46 Wn. (2d) 457, 282 P. (2d) 287; (With respect to the parol evidence rule)—*Amherst Inv. Co. v. Meacham* (1912), 69 Wash. 284, 124 Pac. 682.

The majority opinion stresses the written "contract" or "agreement" language in RCW 4.16.040(2) in holding that the six-year statute of limitations does not apply in the instance of an *ex parte* written memorandum relating to an agreement or contract. This ignores the fact that RCW 4.16.080(3) speaks in terms of a written *"instrument,"* and the fact that these two statutes must be construed together to determine which causes of action are cut off by the three-year statute of limitations. The majority opinion also ignores, or silently overrules, previous cases which have construed these two statutes of limitation. And, contrary to the principle previously quoted from *Bain v. Wallace, supra,* the majority opinion certainly strains the law relative to the defense of the statute of limitations—even more so in the

light of our prior decisions which are clearly inconsistent with the rule established by the majority opinion.

In *Voorhees v. Nabob Silver-Lead Co.*, *supra*, an attorney brought an action to collect his fees for services rendered to a corporation. *The only evidence of his contract of employment was contained in the corporate records. This court held that accounts audited and approved by the corporate board of trustees (an ex parte writing) constituted a sufficient writing to bring the action within the six-year statute of limitations.* The majority opinion does quote, in part, from the *Voorhees* decision, and states that the decision is based on the fact that the corporation had "issued its voucher in writing." However, if the *Voorhees* opinion is read in its entirety, it reveals that the only reference to a "voucher in writing" is contained in the plaintiff's allegations—and those allegations are denied by the defendant-corporation. Furthermore, in its *ratio decidendi*, the court never refers to the alleged "voucher in writing."[2] With respect to the statute of limitations question, the court actually had this to say in its *ratio decidendi*:

"Where accounts purport to be audited and approved by a board of trustees and certified to be correct, *that becomes a written instrument.* . . . [Citing cases.]" (Italics mine.)

In the *Voorhees* case, after setting out the two statutes of limitation, the court continued:

"We have accordingly decided that, under the above statutes, an implied liability arising out of a written instrument is included in the same clause with an express liability arising out of a written contract. . . . [Citing cases.]

"This action was instituted on the instrument above described by the filing of the complaint in the office of the clerk of the court below on January 22, 1932. Being governed by the six-year statute of limitations, it was well within the period of limitations."

---

[2]Even if the decision had been based on the fact that a "voucher in writing" had been issued by the corporation, that still would mean that the decision was based on an *ex parte memorandum relating to the contract.*

In *DeBritz v. Sylvia, supra,* the plaintiff sought to enforce an option which, *although not signed,* had been acted upon by the defendant-optionee. The defendant contended that the cause of action was barred by the three-year statute of limitations. The court said:

"The situation here presented is very like questions which have arisen concerning the rights of the grantor and grantee under a deed which was executed only by the grantor and delivered by him. Concerning such a situation, the rule is as stated in 34 Am. Jur., Limitation of Actions, p. 75, § 88:

" 'It is established that the acceptance of a deed by the grantee named therein makes it a written contract, and the obligations created by the deed are therefore evidenced by a writing and are not governed by the limitation respecting verbal contracts.'

"Appellant's right to take possession of the lease and property here in question was exercised by appellant pursuant to the written option above quoted, and was derived from the contract which resulted from his taking possession of the property under the option. This action, then, arises out of the written agreement which, *while of itself unilateral in its nature,* became binding upon respondent and appellant when the latter elected to exercise his right under the option to take possession of the property covered thereby." (Italics mine.)

See, also, *Geyen v. Time Oil Co., supra,* where the court held an assignment of a lease to be within the six-year statute of limitations, although it was not personally signed by one of the parties. And see *Ingalls v. Angell, supra,* and *Levold v. Pederson* (1924), 130 Wash. 380, 227 Pac. 510, where the court indicates that *ex parte* writings would be sufficient to bring the contract within the six-year statute of limitations if the writing contained all of the elements of the contract.

In three cases, this court has held that a right to contribution between cosureties is within the six-year statute of limitations. *Caldwell v. Hurley* (1906), 41 Wash. 296, 83 Pac. 318; *Lindblom v. Johnston* (1916), 92 Wash. 171, 158 Pac. 972; *Pioneer Mining & Ditch Co. v. Davidson* (1920), 111 Wash. 262, 190 Pac. 242. The basis for these holdings is indicated in the following language from *Caldwell v. Hur-*

*ley, supra,* in which the court states that our statute of limitations

". . . differs from the statutes of limitation of most, if not all, the other states. In fact, after a painstaking research, we have found no similar statute. The peculiar feature of our statute is that an *implied liability* arising out of a written instrument is included in the same clause with an *express liability* arising out of a written contract. The legislature evidently thereby intended that a certain class of actions should be included within the terms of said section which had not in other states been associated or connected with actions on written instruments or actions founded upon written agreements."

Another indication that this court has heretofore considered *ex parte* writings containing all of the elements of the contract to be a sufficient writing to apply the six-year statute of limitations is the fact that the court has consistently said that statute of frauds cases are helpful in determining if the writing is sufficient. Even in *Aall v. Riverside Irr. Dist.* (1930), 157 Wash. 442, 289 Pac. 22, the principal case relied on by the majority, the court said:

"Necessary written stipulations in contracts required to be in writing, under statutes of frauds, are, by way of analogy, helpful here."

See, also, *Levold v. Pederson, supra*; and *Geyen v. Time Oil Co., supra.*

There are four prior cases which have applied the law of this jurisdiction to situations similar to the case at bar. The most recent of these is *Purvis v. P.U.D. No. 1* (1957), 50 Wn. (2d) 204, 310 P. (2d) 233, in which the court concluded that the contract was partly written and partly oral, since the minutes did not contain all of the elements of the contract.

In *Aall v. Riverside Irr. Dist., supra,* the court also held that the corporate minutes did not reveal all of the terms of the contract—that is, the contract was partly in writing and partly oral. The court said:

"We conclude that appellant's employment contract was not wholly in writing and therefore not in writing within the meaning of Rem. Comp. Stat., § 157, subd. 2."

In the Aall decision, the court cites three cases in support of the conclusion reached therein. All three are *statute of fraud* cases, which stand for the proposition that written memorandum must express all essential terms of the contract with such certainty as to render recourse to parol evidence unnecessary. One of the cases cited is from the Texas court; to me, this clearly demonstrates that the court in the *Aall* case did not intend to hold that corporate minutes and records could never constitute a sufficient memorial of a contract to bring the cause of action within the six-year statute of limitations, because the Texas courts *for over sixty years* have held that corporate minutes can satisfy the writing requirement of the statute of limitations. In *Texas Western R. Co. v. Gentry* (1888), 69 Tex. 625, 8 S. W. 98, the Texas supreme court said:

"It is held in several cases that a resolution of the board of directors, or other lawfully constituted governing body of a corporation, duly entered upon their minutes and signed by the proper officers, if intended as the completion of a contract, is a memorandum in writing, as required by the statute of frauds, and that as such it can be lawfully enforced. . . . [Citing cases.] In the few cases which seemingly hold a contrary doctrine, the resolutions were deemed rather propositions for a contract than final acceptances of an agreement. . . . [Citing cases.] If a resolution duly entered and signed be a writing under the statutes of frauds, it must be a contract in writing within the meaning of the statute of limitations, where it shows upon its face that it is intended as the final acceptance of a previous agreement. This intention is most clearly expressed in the resolution under consideration. We therefore hold that the action was not barred by limitation."

And, in *Kerby v. Collin County* (1948), Texas Civil Appeals, 212 S. W. (2d) 494, 3 A. L. R. (2d) 804, a Texas court of civil appeals states:

"The minutes of the Commissioners' Court of Collin County showing Mrs. Kerby's appointment and her immediate acceptance and qualification, in our opinion evidenced a completed transaction. The written evidence need not have been comprised in a single document, but could consist of several in combination . . . [Citing cases.]; nor does

the statute require that all the undertakings assumed be set out in the memorandum . . . [Citing cases.]: Nor was it required that the consideration for the undertaking, that is, the salary to be paid, be stated in the memorandum, as same was included by implication and could be shown otherwise. [Citing cases.]

"So we conclude that the indebtedness sued for by appellants is and was evidenced by and founded upon a contract or memorandum in writing within the meaning of the four-year statute of limitations."

The next Washington case to consider the problem was *Voorhees v. Nabob Silver-Lead Co., supra,* in which this court held that, where accounts purport to be audited and approved by a board of trustees and certified to be correct, such a record becomes a written instrument, and the contract so memorialized is within the six-year statute of limitations.

That the *Voorhees* case, *supra,* is a square holding on this point is demonstrated by the case of *Grismer v. Merger Mines Corp.* (1942), 43 F. Supp. 990. In that case, the Federal district court for the eastern district of Washington, *applying Washington law,* said:

"In so far as plaintiffs seek enforcement of the contract for the return of the stock, this is 'an action upon a contract in writing, * * * .' Rem. Rev. Stat. of Wash. Sec. 157, subd. 2. *The contract consists of the corporate minutes and entries* made under Pearson's direction and control. *Voorhees v. Nabob Silver-Lead Co.,* 174 Wash. 5, 24 P. 2d 114." (Italics mine.)

See, also, 3 A. L. R. (2d) 831, § 25, where the annotator states:

"A written claim for legal services presented by an attorney to a corporation, which was audited and approved by a resolution of the board of directors entered in the minutes of the corporation, was held to be a written contract with respect to the statute of limitations, in *Voorhees v. Nabob Silver-Lead Co.* (1933) 174 Wash 5, 24 P2d 114."

A Kentucky court recently considered the same problem in *Mills v. McGaffee* (1953), 254 S. W. (2d) 716. It had this to say:

"The precise question raised on this appeal is: Did the written order of the school board in the minute book evidencing the agreement constitute such a contract in writing as to remove an action thereon from the application of KRS 413.120(1), the 5-year statute of limitations, and make KRS 413.090(2), the 15-year statute of limitations, controlling?

"Appellees argue that the entry in the minute book is nothing more than a written memorandum or note evidencing an oral agreement between the board and Mills and that, although KRS 371.010(7) specifically provides that such a written memorandum or note signed by the party to be charged shall remove a contract from the provisions of the statute of frauds, the agreement does not cease to be an oral one. Furthermore, appellees contend the 5-year statute of limitations has no such exception as that mentioned in the statute of frauds and they claim KRS 413.120(1), in that it requires the contract to be wholly in writing, applies here because they insist this is an action upon an oral contract which Mills seeks to prove solely by a written memorandum. We agree that, if the contract be partly oral and partly in writing or if a written agreement is so indefinite as to necessitate a resort to parol testimony to make it complete, the 5-year statute of limitations concerning 'contracts not in writing' would be applicable just as though the contract had rested entirely in parol. 53 C. J. S., Limitations of Actions, § 68, p. 1030.

"A written contract is one which is all in writing, so that all its terms and provisions can be ascertained from the instrument itself. 45 Words & Phrases, p. 605; 53 C. J. S., Limitations of Actions, § 60, p. 1017. The cases generally hold that a written instrument which sets forth the undertaking of the persons executing it or discloses terms from which such an undertaking can be imported, and which shows the consideration for the undertaking, and which identifies the parties thereto, will be considered a contract in writing. See Annotation to 3 A. L. R. 2d, Sec. 2, p. 812, et seq., wherein many cases are cited upholding the above principles.

"There can be little doubt that the entry in the minute book stated every essential item necessary to create the entire contract between the board and Mills. The board, according to the writing, employed Mills as its secretary at a stated salary for a period of two years, beginning and ending at a definite date, and both the board through its chairman and Mills as secretary signed the minute book. Mills entered upon his employment and worked as secretary

for 15 months. No material provision is omitted from the agreement, and there is no need to resort to parol evidence to complete the contract. And there was every intention that the written instrument should be the final contract between the parties. We are of the opinion the writing discloses the entire agreement; therefore, it is such a written contract between the parties as to make the 15-year statute of limitations applicable to it.

"Wherefore, the judgment is reversed with directions that it be set aside and a new one entered in conformity with this opinion."

Now, with respect to the particular contracts involved in the case at bar, there is no dispute that the corporate minutes completely set out the full terms of the contract relating to the furniture and office supplies. However, respondent claims that all of the terms of the employment contract are not set out in the minutes of the association. Evans was manager of the association from its inception in 1934 until May 27, 1948. He alleges that the terms of his employment are set out in the minutes of the meetings of the board of directors and the association,[3] and that the trial court so found.

---

[3] The pertinent sections of the minutes are these:
"DIRECTORS MEETING MARCH 22nd 1945
" . . .
"The manager reported that he would like a resolution passed regarding his consultant fee to be paid by the Processors. 'This agreement made this 10th day of March 1943 between the Yakima Valley Grape Growers Association of Grandview, Washington, hereinafter referred to as the Association and Homer E. Evans, also of Grandview, Wash. hereinafter referred to as the General Superintendent, Witnesseth:
"Paragraph 4 The Association agrees to pay the general superintendent, as compensation for his services, a commission of five percent (5%) of the gross sales of grape juice and other grape products made by the Yakima County Processors, Inc. during said term, not in excess of $100,000.00 per annum, said commission to be due and payable monthly as earned, and the general superintendent agrees to pay all his own expenses, such as those of maintaining an office, travelling expenses, telephone, telegraph and clerical assistance. Motion made by M. A. Taylor, seconded by L. A. Adams that the inserted resolution be accepted. Motion carried."
"DIRECTORS MEETING OF APRIL 2, 1947:
"The question of mercantile business was brought up. Motion by Mr. Geffee seconded by Wees that we allow Mr. Evans to continue the

A review of the cases, both in this and other jurisdictions, convinces me that any written memorial of a contract is sufficient to bring the action within the six-year statute of limitations, if (1) every essential element necessary to create the entire contract between the parties is stated in the writing, and (2) the parties intended to contract. Professor Corbin (Corbin on Contracts, *supra*, p. 84) states:

"Statutes of limitation often use the term in prescribing a time limit for actions. *No statute should be held to prevent enforcement if the evidential writings are sufficient to attain the purpose of the statute in preventing fraud and error, even though some supplementary parol evidence is necessary.*" (Italics mine.) (The word "term" used herein refers to "written contract.")

In this case, there is no dispute that the writing, memorializing in the minutes of the association the contract for the sale of the furniture, meets these requirements. With respect to the employment contract, the trial court found that the writing set out the entire contract, and that finding is supported by the record. The fact that the exact amount owing to Evans is not stated in the minutes, but has to be computed, does not make the contract partly oral and partly written, since the writing is complete "and furnishes an objective standard for the ascertainment of any amount due thereunder . . . to respondent." *Rawleigh Co. v. Graham* (1940), 4 Wn. (2d) 407, 103 P. (2d) 1076, 129 A. L. R. 596.

mercantile business as at the present, until such a time as the Board deems a change should be made. Motion carried."

"REGULAR MEETING OF THE ASSOCIATION, MAY 27, 1948:

"Motion by McGuinness that the commissions due Mr. Evans as of this date, be paid by the accounts receivable chosen by Mr. Evans as of this date. The amount selected by Mr. Evans to approximate the balance owed Mr. Evans, said by Mr. Evans to be approximately $8,000 more or less, depending upon the ultimate disposition of Mr. Evans' office supplies, etc. The Yakima Valley Grape Growers Association reserves the right to pay Mr. Evans in cash the above amount, less any of the sums above specified recovered by Mr. Evans, as of the day the balance is tendered Mr. Evans. The total sum owing Mr. Evans to be determined by the annual audit of the books relative to the Association. Motion seconded by Massoth. Motion carried."

·I·believe the judgment of the trial court in the first cause of action should be affirmed.

I turn now to the second cause of action. As indicated by the majority, this is based upon a written contract; but I do not believe the majority considers the written contract in entirety. The contract between the parties does not consist solely of the membership marketing agreement—and it certainly does not consist solely of § 3 of the membership marketing agreement, as intimated by the majority—it also contains the bylaws of the association. This court has expressly held on previous occasions that the bylaws of an association or corporation constitute a contract between the organization and the member (or stockholder, in the normal corporation). *Rodruck v. Sand Point Maintenance Comm.* (1956), 48 Wn. (2d) 565, 295 P. (2d) 714; *Child v. Idaho Hewer Mines* (1930), 155 Wash. 280, 284 Pac. 80; *Seattle Trust Co. v. Pitner* (1898), 18 Wash. 401, 51 Pac. 1048.

In this case, there should be no question as to the contract status of the bylaws, since they specifically provide that membership in the association shall be acquired by a producer *by signing a copy of the bylaws; and further, the membership marketing agreement specifically incorporates the bylaws by reference and makes them a part of the marketing agreement.* It is apparent that the membership marketing agreement and the bylaws must be considered as an integrated whole in determining what "vested contractual rights" Evans had. See *Farmers' Mut. Ins. Co. v. Kinney* (1902), 64 Neb. 808, 90 N. W. 926. Examining the whole agreement, we find that Evans agreed to be bound by changes made in the bylaws.

There are two conflicting lines of authority in this country as to the meaning of a reservation of power to amend the bylaws: (8 Fletcher Cyclopedia Corporations 661-682, § 4177). (1) The reservation only authorizes adoption of such amendments as are reasonable; (2) the reservation authorizes any amendment, no matter how drastic the change, since the parties have no "vested contractual

rights." Assuming the Washington rule to be the stricter of the two interpretations, the question presented in the second cause of action is the reasonableness of the bylaw amendment.

In Fletcher Cyclopedia Corporations, *supra*, § 4191, pp. 730-733, we find the following cogent discussion of reasonableness:

"It is manifest that reasonableness, in its nature, is not a matter for determination by any universal test or general rule, and that the reasonableness of any particular by-law or by-laws depends almost entirely upon the facts and circumstances of the particular case. Reasonableness may depend, in part at least, upon the nature, purposes or objects of the corporation. It may also depend upon whether or not the particular by-law or by-laws in question were within the corporation's power of adoption. Thus, a by-law which requires the doing of that which is illegal or prohibited by law is beyond the power of the corporation to adopt and is unreasonable and invalid, and a by-law which infringes upon the constitutional or statutory rights of a member as a citizen is unreasonable. Also unreasonableness will depend, to a considerable extent, upon the relation which the person raising the question sustains to the corporation, that is, whether he is a stockholder or member or a stranger to the corporation. To illustrate, a by-law may be reasonable as to the corporation and as to third persons contracting, subsequently, to its adoption, with the corporation, and yet be invalid as to third persons sustaining, at the time of its adoption, contractual relations with the corporation. And when the stockholders alone are affected by the unreasonableness of the by-law, it can be attacked by them only and not by a third person.

"While the reasonableness of by-laws is a question which is open to judicial investigation, before a by-law will be declared invalid for unreasonableness, the fact that it is unreasonable must clearly appear, and where reasonableness is a mere matter of judgment and one upon which reasonable minds must necessarily differ, the court will ordinarily not feel warranted in substituting its judgment for the judgment of those who were authorized to adopt by-laws and who exercised their authority by adopting the one attacked. And in so far as the claim of unreasonableness involves only questions of internal administration, policy or discipline the courts are reluctant to interfere, and will do

so only where there is a clear case of unreasonableness, and ordinarily only where property rights are involved. Generally speaking, a claim that a particular by-law is invalid because unreasonable presents a question of law for the court rather than one of fact for the jury, although the question may be presented as one of fact.".

Earlier, at page 678, the same authority indicates that another factor in determining the reasonableness of a change in the bylaws is the necessity of the change for the continued existence of the association.

Examining the facts and circumstances of this particular case in the light of the various considerations or tests of reasonableness, we find the following: (1) The record clearly indicates that the board of directors and the great majority of the members of the association felt that the bylaw amendment was necessary to assure the continued existence of the organization; (2) RCW 24.32.210 authorizes co-operative marketing associations, such as appellant, to conduct their business either on the purchase-sale or the agency (co-operative pool) type of marketing agreement; and (3) *that the ultimate return to the producer-member is the same under either type of agreement.* I find it impossible to conclude in the light of these facts that the bylaw amendment was unreasonable. I, therefore, believe that Evans was bound by the amended bylaw, even though he did not vote for it.

But assuming, *arguendo*, that Evans was not bound by the amendment because he did not vote for it, I do not believe that the result of the majority is supported by the facts and the law. The authorities are clear that "A member is bound by an amendment affecting his contract rights by his assent to it after its adoption." 8 Fletcher, *supra*, § 4188, p. 720. The majority applies the doctrine of anticipatory breach to the third cause of action, but I believe they overlook its obvious application to the the second cause of action. If the amendment of the bylaws deprived Evans of a "vested contractual right," he knew that fact when the membership adopted the bylaw and when the board of directors decided to put the association on the co-operative

pool basis. With respect to anticipatory breach, Professor Corbin (4 Corbin on Contracts 945, § 983) has this to say:

"Not only are the injured party's duties terminated and his conditions precedent excused; *it is now the general rule that when a definite repudiation is communicated to him the rule as to avoidable consequences is at once applicable. He must not proceed with his own performance if his so doing will increase the extent of his injury.* He will not be given damages for any part of his loss that he could have avoided by refraining from continued performance or by making reasonable effort." (Italics mine.)

When Evans delivered his 1948 grape crop to the association, he knew that he would not receive cash—yet he delivered it. Certainly, this in itself constituted a waiver of his right to claim the cash market price and an assent to the amended bylaw. (At the very least, it destroyed his right to damages in this action, since he could have avoided all of his claimed damages by the simple expedient of selling his grapes on the open market—as he was required to do under the doctrine of anticipatory breach.) In *Wenatchee Dist. Cooperative Ass'n v. Thompson* (1927), 143 Wash. 657, 255 Pac. 918, this court considered a controversy over a purported waiver of a contract right. The court discussed an ambiguous written waiver, but concluded that the member "having thereafter dealt with the association by delivering his crop to it in the year 1921 to be handled under the contract, we think he is bound by it, . . ." In *Beaulaurier v. Washington State Hop Producers* (1941), 8 Wn. (2d) 79, 111 P. (2d) 559, in a unanimous *En Banc* decision, this court applied the doctrine of waiver by conduct, and stated:

"Waiver by conduct has been recognized by this court many times, the following being typical instances of the application of that principle: *Buck v. Equitable Life Assurance Society*, 96 Wash. 683, 165 Pac. 878; *Yours Truly Biscuit Co. v. Lilly Co.*, 142 Wash. 513, 253 Pac. 817; *Reynolds v. Travelers Ins. Co.*, 176 Wash. 36, 28 P. (2d) 310."

In the *Beaulaurier* case, *supra*, the court held that the member had waived his right to raise the question of fraud by taking part in the meetings of the corporation. In the instant case, in addition to Evans' indication of assent to

the change in the bylaws by his delivery of the 1948 grape crop, there is the further factor that *he was in large part responsible for the passage of the bylaw amendment.* Surely this should be as binding on him as the conduct of the member in the *Beaulaurier* case.

I agree with the majority that the third cause of action is determined by the outcome of the second cause of action. But the majority concluded that the association was guilty of anticipatory repudiation of the certificates of indebtedness—giving Evans an immediate cause of action; I disagree. I believe the foregoing demonstrates that Evans assented to the amendment; therefore, he was in breach when he failed to deliver his 1949 crop. Under the express terms of the marketing agreement, Evans' breach of the contract gave the association the right to repudiate the certificates. See *Bessette v. St. Albans Co-operative Creamery* (1935), 107 Vt. 103, 176 Atl. 307.

I would affirm the judgment as to the first cause of action and reverse the judgment as to the second and third causes of action.

FOSTER and HUNTER, JJ., concur with FINLEY, J.

HILL, C. J. (concurring in part and dissenting in part)—I agree with the dissent as to the first cause of action. I agree with the majority as to the second and third causes of action. The result is that I would affirm the trial court on all three causes of action.